HAUCK-HOERR BAKERY COMPANY, Respondent,
v. UNITED RAILWAYS COMPANY, Appellant.

**St. Louis Court of Appeals, October 22, 1907.**

1. **STREET RAILWAYS: Negligence.** In an action against a street railway company for damages to the plaintiff's wagon and team caused by a collision with one of the defendant's cars, the evidence is examined and held sufficient to submit to the jury the question as to whether the defendant was negligent in running at an unlawful rate of speed and in failing to keep a vigilant watch and in failing to stop the car in time to avoid an injury after the peril of the plaintiff's wagon and team could have been discovered.

2. ———: **Contributory Negligence.** An examination of the evidence is also held to show that it is sufficient to submit to the jury the question as to whether the driver of plaintiff's team was guilty of contributory negligence in failing to look and listen before driving upon the track.

3. ———: ———. One about to drive upon a street railway track may presume that an approaching car is running at a lawful rate of speed unless he can ascertain to the contrary.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

AFFIRMED.

*Boyle & Priest, T. E. Francis* and *G. T. Priest* for appellant.

*Pembrook R. Flitcraft* and *Earl M. Pirkey* for respondent.

GOODE, J.—This action was instituted to recover for damage done to property belonging to the plaintiff, in a collision with one of defendant's trolley cars. The accident happened about half past four in the morning of November 27, 1905, and at the intersection of Angelrodt and Eleventh streets in the city of St. Louis.

Plaintiff conducts a bakery from which it delivers bread about the city. On the morning named one of its drivers was in charge of a wagon and team of mules and engaged in the delivery of bread. He was driving eastward on Angelrodt street toward Eleventh. The former street runs east and west and the latter north and south and is narrow—about twenty feet wide. Angelrodt goes down to Eleventh street on a heavy grade and the grade of Eleventh descends a trifle toward the north—the way the car was headed. Schiller, the driver of the team, was driving along the south side of Angelrodt street toward Eleventh, on which was a car track of defendant. His team was under control, but he did not stop them before going on the track. He swore the pace of the team was a jog-trot and, again, that it was just out of a walk. As the team turned around the southwest corner of the two streets, proceeding southward into Eleventh, it encountered a trolley car and the tongue of the wagon penetrated the front of the dashboard of the car, passed through the front vestibule, crushed one of the seats of the car and would have struck a passenger had he not moved out of the way. The seats of the car ran longitudinally down each side. At the instant of the collision the left mule of the team was in the track and the right mule to the right or west of the track. The left mule was hurled sixty or seventy feet away, as was the wagon. Schiller saved himself by jumping from the wagon. The injuries for which a recovery was asked were done to the wagon, the bread in it, the harness and the left mule. Plaintiff got judgment for $156.75 and defendant appealed. The charges of negligence are three: violation of the vigilant watch ordinance, violation of an ordinance providing that cars should not run at a greater speed than ten miles an hour, and failure to sound the gong of the car so as to give warning of its approach. We do not find that the assignment of negligence due to failure to sound

the gong was carried into the instructions given for the plaintiff, who was allowed to recover only on a finding that the motorman failed to keep vigilant watch for persons on the track or approaching it and to stop his car in the shortest time and space possible on discovering plaintiff was in danger, or else on a finding that the car was run at a speed in excess of ten miles an hour— that the negligence of the motorman in one or the other of those respects was the cause of the injury. But the failure to ring the gong bore on the issue of whether the driver exercised ordinary care in driving on the car track, and was taken account of in the instructions on contributory negligence granted at defendant's request. The jury was told in instructions for plaintiff that it must find, as a condition precedent to a judgment in its favor, that the driver of the team was in the exercise of ordinary care at the time of the collision; and the duty incumbent on the driver to look and listen for an approaching car before venturing into a position of danger, and to exercise ordinary care for his own safety and that of the property in his charge, was presented to the jury in various instructions asked by defendant's counsel. We find no refused instructions in the record, except one directing a verdict in defendant's favor; and therefore shall confine our opinion to the question of whether or not the evidence entitled plaintiff to go to the jury. It is the theory of defendant's counsel that plaintiff's driver drove into the car instead of colliding with the front of it; that is to say, that the tongue of the wagon penetrated the west side of the car. There is little or no evidence to support this theory, and we have no doubt the tongue entered the dashboard in front and a foot or two from its west edge. This would indicate that the team had turned from Angelrodt street southward into Eleventh but was struck before it had time to get clear of the track. In driving into Eleventh street, the tongue of the wagon and the left mule came

over the track because of the narrowness of Eleventh street. In a moment or two, if properly guided, the team would have cleared the track and proceeded down Eleventh street on the driveway between it and the west curb; but it was caught by the car before it got off the track. The evidence tended to show the car was proceeding at an unlawful speed; estimated by some of the witnesses as high as thirty-five miles an hour, whereas the ordinance prohibits a speed in excess of ten miles an hour. There was evidence too that the car could have been stopped and a collision avoided after the perilous position of the wagon and team was apparent, even at the speed at which the car was running, and certainly if it had been running at lawful speed. One witness who was a passenger on the car testified he saw the team when the car was one hundred and twenty-five feet away, and there is testimony that it could have been stopped by proper efforts before going said distance. Hence the evidence tended to establish negligence on the part of the motorman which was the cause of the accident, and the questions left are whether it was conclusively shown the driver was guilty of negligence contributing to it, and whether the motorman by ordinary care could have averted the collision after the danger became apparent. What is mainly relied on for proof of negligence on the part of the driver is, that he swore he was five feet behind the building at the southwest corner of Angelrodt and Eleventh streets when he looked and listened for a car before going into Eleventh street. On this testimony defendant's counsel insist he looked when it was impossible to see whether or not the track was clear, and therefore failed to comply with his duty to look and listen before venturing on the track; or in other words, that he should have looked after he got east of the building line and where his view was clear. [Kelsay v. Railroad, 129 Mo. 362, 30 S. W. 339;

127 App—13

Jones v. Barnard, 63 Mo. App. 501.] The driver was driving eastward on the south side of Angelrodt street. There was a sidewalk ten or more feet wide between him and the building at the southwest corner. Moreover, he was out in the driveway a short distance. Now the driver swore that when he looked he was able to see southward along Eleventh street nearly the length of the entire block; nor was it proved that the building on the corner would prevent a view for that distance from his position in the street; at least not so positively that we can treat his statement as disproved by the physical surroundings and of no probative effect. Besides, he swore he was pretty certain he looked again before going on the track, but was not positive. He said, again, he looked around the corner and could see more than a hundred feet. This was on his recall for further examination. His statements about the distance he could see are not entirely consistent. If he looked along Eleventh street before driving into it and could see as far as he said and saw no car coming, nor heard one, we cannot hold him conclusively guilty of negligence in turning into the street. It looks like he would have heard the rumble of the car at that quiet hour if he had listened; but this circumstance is not relied on for a nonsuit, and likely would be for the jury to consider if it was. The contention·is that the driver's own testimony shows he failed to look sufficiently to ascertain if a car was coming and that this negligence concurred, as a cause of the accident, with that of the motorman, if the latter was in fact negligent; and as to this defendant's counsel admits the proof tended to show the motorman was negligent. We think the jury might fairly infer, if it believed the driver's testimony, that he saw far enough down Eleventh street to assure himself that no car was so near as to endanger him, if it was moving at the lawful speed of ten miles an hour; as he might presume it was, unless he could ascertain

to the contrary.    [Hutchinson v. Railroad, 161 Mo. 246.]

The testimony that the perilous position of the wagon and team could be seen from the car when it was one hundred and twenty-five feet away and that the car could have been stopped in a shorter distance, raised a question of fact for the jury as to those issues. The judgment is affirmed.    All concur.