# HENRY P. HOF v̇. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division One, July 3, 1908.

1. **PLEADING: Two Causes of Action: Motion to Elect: Waiver.** Conceding, without deciding, that the petition contained two causes of action, one for common law negligence arising *ex delicto*, and the other arising *ex contractu* for a violation of pleaded ordinances in reference to speed of cars and a vigilant watch, it is held that defendant, by not standing on its motion to elect and answering over, abandoned the motion to elect, and cannot raise it again on appeal.

2. **NEGLIGENCE: Demurrer: Riding Upon Track.** Plaintiff's evidence showed that when he was within ten or twelve feet of the single car track, under ordinary circumstances, he could have seen the approaching car sixty or seventy feet away; but that there were two tall trees with long branches and heavy foliage standing near the curb which somewhat obstructed his view in the direction in which he was approaching; that an arc lamp was suspended above the crossing having a hood over it, which kept its brilliancy within a limited circle, yet its rays extended as far as the streets' intersection; that a man on a horse, as he was, being inside the circle of light, illuminating the four corners of the intersection and the whole space within, would be conspicuous for a long distance to the motorman of the car approaching from the darkness, while his own vision inside the blaze of light would be dazzled in such a way as to make it difficult for him to see beyond the limits of the circle; that he looked for approaching cars, but saw none until the one which struck his horse was right on him; that it was then approaching at a speed of from twenty-five to thirty miles an hour, without any signal of its approach. *Held,* that the demurrer to the evidence, on the ground of contributory negligence, was properly denied, on any one of the three issues of negligence, namely, common law negligence without warning, excessive speed, and no vigilant watch.

3. **———: Loss of Money and Jewelry.** A loss of money and jewelry by plaintiff at the time of the accident, if the direct result of the negligent injury by the street car company, and it is shown that the accident was the result of its negligence, may be recovered in the suit for personal injuries, and where there is some evidence that goes to show the causal connection be-

tween the accident and the loss of the money and jewelry, then the issue is one for the jury, under proper instructions.

4. ———: **Erroneous Instruction: "Contributing to Cause Collision."** The instructions should tell the jury that they must find that defendant's negligence caused the injury and not merely contributed to it. And they should also tell them what facts caused it, and not leave them to conjecture. So that an instruction which did not tell the jury that if they found the facts stated therein caused the collision between the plaintiff's horse and defendant's car and that plaintiff's injuries resulted therefrom, but told them that if they found from the evidence "that such negligence of defendant's servants to use ordinary care in running said car upon such crossing directly contributed to cause said collision and injury to plaintiff's person and loss and injury to his property; and if the jury further find from the evidence that the plaintiff exercised ordinary care to look and listen for an approaching car before and whilst going upon said crossing, and such care to avoid such collision and injuries, then plaintiff is entitled to recover," authorized the jury to find that plaintiff was injured by the concurring negligence of the servants in charge of the car and some unknown cause not stated in the petition or shown in the evidence, and was calculated to mislead the jury.

5. ———: ———: ———: **Invited by Defendant.** And defendant is not estopped to complain of the error in this instruction by the fact that one of its refused instructions told the jury that if they believe from the evidence "that the plaintiff was himself guilty of some negligence which directly contributed to cause his injuries and losses," he could not recover. That instruction is correct and did not invite the error contained in plaintiff's.

6. ———: **Speed Ordinance: Civil Liability: Theory at Trial.** Appellant cannot shift its position on appeal. Having tried its case in the court below on the theory that the city had authority to create a civil liability by enacting ordinances governing the speed of cars and requiring that a vigilant watch be kept for persons on the track or approaching thereto, it will not on appeal be permitted to insist that such ordinances were not binding on it until accepted by it. By introducing in evidence an ordinance showing that a speed of fifteen miles an hour was permitted at the place of the accident, defendant waived its right to insist that the speed ordinance was not binding upon it, and by asking an instruction on the question of a vigilant watch it admitted its liability under the Vigilant Watch Ordinance of the evidence showed its motorman had violated that ordinance.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes,* Judge.

REVERSED AND REMANDED.

*Boyle, Priest & Lehmann* and *Geo. W. Easley* for appellant.

(1) The court erred in overruling defendant's motions to require plaintiff to elect upon which assignment of negligence he would proceed to trial, made at the opening of the trial, and renewed at the close of plaintiff's evidence in chief. It was also error to admit the ordinance in evidence, so far as the vigilant watch provisions were concerned, without proof of its acceptance by defendant, as well as to instruct upon the same in the terms of plaintiff's third instruction. The motions to elect should have been sustained. The petition blends causes of action arising *ex delicto* with causes of action arising *ex contractu.* The Vigilant Watch Ordinance could only be passed under the power of the city to contract. City charter, art. 10, secs. 1, 2. It could not be passed under its power to legislate. City charter, art. 3, sec. 26; Fath v. Railroad, 39 Mo. App. 452; Fath v. Railroad, 105 Mo. 537; Senn v. Railroad, 106 Mo. 152; Moran v. Car Co., 134 Mo. 641; Byington v. Railroad, 147 Mo. 673; Murphy v. Railroad, 153 Mo. 253; Saunders v. Railroad, 153 Mo. 253; Holwerson v. Railroad, 157 Mo. 245; Anderson v. Railroad, 161 Mo. 411; Nellis on St. Rys., p. 306, sec. 10. The cases of Jackson v. Railroad, 157 Mo. 621, and Waller v. Railroad, 164 Mo. 180 (S. C., 120 Mo. 655), were cases under a speed ordinance and cannot be decisive of the principle here involved, and cannot be held to overrule the long lines of cases especially decided on the Vigilant Watch Ordinance. A rule established and followed for a long series of years cannot be fairly overruled by inference or construction

from rulings on questions involving entirely different propositions. There is a very broad distinction in the exercise of these two powers. One is public and general, the exercise of sovereignty; the other, private and proprietary. One legislative, the other contractual. State ex rel. v. St. Louis, 145 Mo. 572; Illinois Trust Co. v. Arkansas City, 76 Fed. 282; Pike's Peak Power Co. v. Colorado Springs, 105 Fed. 1; Seltzenger v. Tamaqua, 187 Pa. St. 539; Schaub v. Lancaster City, 156 Pa. St. 362; Weston v. Syracuse, 158 N. Y. 274. If these positions are correct, then plaintiff has joined in the same count a cause of action arising out of contract with two causes of action arising out of tort for common law negligence. The common law distinctions between actions *ex contractu* and *ex delicto* are in substance retained by our code. Sumner v. Rogers, 90 Mo. 329. The rule in this State is that such actions cannot be blended in the same count. Kendrick v. Railroad, 81 Mo. 521; Harris v. Railroad, 51 Mo. App. 128; Linnville v. Harrison, 30 Mo. 228; Jamison v. Copher, 35 Mo. 351; Ederlin v. Judge, 36 Mo. 483; Southworth Co. v. Lamb, 82 Mo. 242. (2) The court below erred in refusing the several demurrers offered by defendant to plaintiff's evidence. One of two things is clearly shown by the entire evidence offered by and on behalf of the plaintiff: 1, that the plaintiff did not see or hear the car until he was right up to it, or, 2, if the evidence of Henry Kreger is true, he saw it when the horse was 12 feet from the track, and either attempted to cross ahead of the car or was going at such a rapid rate that he could not stop his horse within the 12 feet of space. It is idle for the plaintiff to say that he looked and listened and neither saw nor heard the car. Every other person who testified saw the car from sixty to eight hundred feet. The leaves of the tree could not have shut off his view, or the sound of the car. If they did, plaintiff was well acquainted with the sit-

uation, and should have approached the track with much more caution than the record shows he used. His evidence shows a want of frankness about looking and listening. What he said in that respect did not raise any question of fact to be submitted to a jury. "It will be disregarded as testimony by the court." Hook v. Railroad, 162 Mo. 581; Kelsey v. Railroad, 129 Mo. 362; Hayden v. Railroad, 124 Mo. 573; Payne v. Railroad, 136 Mo. 575; Baker v. Railroad, 122 Mo. 589; Gurley v. Railroad, 104 Mo. 233; Hickman v. Railroad, 47 Mo. App. 73. Plaintiff was guilty of such negligence as to disentitle him to recover. The least care for his own safety would have averted the injury. Moore v. Railroad, 176 Mo. 528; Zumault v. Railroads, 175 Mo. 288; Holwerson v. Railroad, 157 Mo. 216; Watson v. Railroad, 133 Mo. 250; Boyd v. Railroad, 105 Mo. 371; Sinclair v. Railroad, 133 Mo. 241; Huggert v. Railroad, 134 Mo. 673; Vogg v. Railroad, 138 Mo. 172; Culbertson v. Railroad, 140 Mo. 35. (3) The court erred in admitting evidence as to the loss of the money and jewelry. There is no evidence whatever to show any causal connection between the loss of the money or jewelry and the collision. It is much more probable that if plaintiff had the money and jewelry with him, they were taken from him by some one after the collision, than that they were separated from his person by reason of the collision. When the verdict must rest upon an inference, the one drawn by the jury must be "the only one which can fairly and reasonably be drawn from the facts." Nellis on St. Rys., p. 303; Laidlow v. Sage, 158 N. Y. 73; Epperson v. Postal Tel. Co., 155 Mo. 382; Smart v. Kansas City, 91 Mo. App. 586; Breen v. Cooperage Co., 50 Mo. App. 202; Fuch v. St. Louis, 133 Mo. 197; Smith v. Bank, 99 Mass. 605. (4) The first and second instructions given plaintiff each contain the vice of allowing

a recovery by plaintiff if the facts therein predicated "directly contributed to cause said collision," etc. Contributed to what? We can understand how two acts of the defendant might in conjunction cause an injury, and that it would be proper to instruct that if each of said acts contributed to causing the injury, plaintiff would be entitled to recover. But the contributing cause set out in these two instructions nowhere confines their operation to the other causes alleged in the pleading. Such an instruction leaves the jury at liberty to consider any other contributing cause, whether alleged or not.

*Amos R. Taylor* and *Barclay & Fauntleroy* for respondent.

(1)   The court did not err in submitting the case to the jury, and in refusing defendant's demurrer to the evidence. From all the circumstances, it is evident that it was a question of fact for the jury whether or not plaintiff was exercising ordinary care in such circumstances. Bakery Co. v. Railroad, 104 S. W. 1137; Goff v. Railroad, 199 Mo. 694; Dahlstrom v. Railroad, 108 Mo. 525; Donohue v. Railroad, 91 Mo. 357; Drain v. Railroad, 86 Mo. 574; Petty v. Railroad, 88 Mo. 306; Schaub v. Railroad, 87 S. W. (112 Mo. App. 529); Waechter v. Railroad, 88 S. W. 147. There is a marked difference between the duty of one crossing tracks to "look and listen," where a street railway (having only a license to use the street concurrently with the public) is involved, and the like duty "to look and listen" when one is about to cross the tracks of a steam railway line. The true rule is that reasonable care must be used and that is the best and only definition of plaintiff's duty, although, in the case at bar, the court required of plaintiff that he look and listen. Shea v. Railroad, 50 Minn. 395 (52 N. W. 902); Lyman v. Railroad, 114 Mass. 83; Traction Co. v. Scott, 58 N. J. L.

682; Wise v. Railroad, 95 S. W. 898; Cytron v. Railroad, 104 S. W. 109; Schafstette v. Railroad, 175 Mo. 142; Latson v. Railroad, 192 Mo. 457. When a car is running on the streets of a city in the night-time, the duty to operate carefully is imperative, and especially where (as in the case at bar) a party on the street, in a strong light, as was plaintiff, cannot well see the approach of a car, coming from the darkness. Weller v. Railroad, 164 Mo. 188; Carey v. Railroad, 101 S. W. 1123; Story v. Railroad, 108 Mo. App. 424; Goff v. Railroad, 199 Mo. 694; Buren v. Railroad, 104 Mo. App. 224. (2) The rulings as to loss of the currency and ruby (on plaintiff's person at the time) were correct. Defendant's contention that no finding was required in the court's instructions that those losses were directly or proximately caused by the collision, is answered by its own instruction which expressly demands such a finding as essential to a verdict for plaintiff. If the said acts of negligence directly caused such losses, plaintiff was entitled to recover for them. On that question all the instructions, considered together (as they should be) demand that the jury find the loss of the money and of the ruby (set in the shirt stud of plaintiff) were direct results of the collision. (3) The fact that the negligent acts described "directly contributed" to the collision and injury (as called for by the first and second of plaintiff's instructions) was the identical form of language adopted by defendant (in its fifth instruction) in submitting the question whether "some act of negligence" of plaintiff "directly contributed to cause his injuries." (a) These instructions were correct, for those whose negligent acts contribute directly to an injury are liable for the consequences. Brash v. St. Louis, 161 Mo. 437; Newcomb v. Railroad, 169 Mo. 409; Harrison v. Light Co., 195 Mo. 623. (b) But even if the instructions for plaintiff were open to question on the account afore-

said, the example set by defendant, adopting, in the 5th instruction, the same mode of instruction and the same language in substance ("directly contributed") would dull the vitality of any assignment of error on that basis, for parties cannot successfully complain on appeal of theories which they approved at the trial and had the lower court adopt. Seckinger v. Mfg. Co., 129 Mo. 590; Sprague v. Sea, 152 Mo. 338; Christian v. Ins. Co., 143 Mo. 460.

WOODSON, J.—This is a suit, which was instituted by the plaintiff against the defendant in the circuit court of the city of St. Louis, to recover the sum of $30,000 damages for personal injuries and loss of property, caused by a collision between him and one of defendant's street cars, in the city of St. Louis.

The petition upon which the case was tried, omitting formal parts, is as follows:

"The plaintiff by leave of court amends his petition and states that the defendant is and at the times herein stated was a corporation by virtue of the law of Missouri, and used and operated the railway and car herein mentioned for the purpose of transporting persons for hire from one point to another in the city of St. Louis. That at said times McNair avenue and Victor street at the places herein mentioned were open public streets within the city of St. Louis.

"That on the 21st day of August, 1900, the plaintiff was riding his horse southward on McNair avenue and Victor street in the city of St. Louis, when defendant's servants in charge of its east-bound car on Victor street carelessly and negligently and without any warning by bell or otherwise of the approach of said car to said crossing, and whilst running said car at a negligent and excessive rate of speed, and without using ordinary care to look out for persons and animals upon said crossing, and to control said car and moder-

ate and stop said car, caused and suffered said car to run against and upon plaintiff's horse, knocking him down and dragging said plaintiff and horse a great distance, and causing the plaintiff great and permanent injuries upon his head, body, shoulders and arms, and greatly lacerating plaintiff's face and the process of the skull, and causing a great and permanent injury to the plaintiff's nervous system and scarifying his head and face for life. And also breaking the cap of knee of plaintiff's horse so as to destroy the value of said horse, and causing plaintiff to lose four hundred and thirty dollars in currency and also one ruby, of the value of fifty-five dollars, and to damage the setting to the extent of thirty-five dollars, and injure his clothing.

"And for another and further assignment of negligence, the plaintiff avers that at the time of his said injuries and loss there was in force within the city of St. Louis an ordinance of said city by which it was provided that conductors and motormen of street cars should keep a vigilant watch for persons either upon the track or moving towards it, and upon the first appearance of danger to such person the car should be stopped within the shortest time and space possible, and the plaintiff avers that at the time of said collision defendant's motorman and conductor in charge of said car failed to keep such vigilant watch and failed to stop said car within the shortest time and space possible upon the first appearance of danger to plaintiff and his horse; which violation of said ordinance directly contributed to cause the plaintiff's injuries and damages.

"And for another assignment of negligence the plaintiff avers that at the time of said collision there was in force within the city of St. Louis an ordinance thereof by which it was provided that street cars should not be run at said place, or in the city of St. Louis,

at a greater speed than eight miles per hour. Yet the plaintiff avers that at the time of said collision said car was being run at a speed greatly in excess of eight miles per hour, to-wit, about twenty-five miles per hour, which violation of said ordinance directly contributed to cause said collision and plaintiff's injury and damage.

"That by the injury to his horse the plaintiff was damaged in the sum of two hundred and twenty-five dollars. That he lost $430 in cash from his pocket. That he lost one ruby of the value of $55, and his clothing to the value of $32.50 were injured and destroyed.

"That by said injuries to his person the plaintiff has suffered and will suffer great pain of body and mind, has been permanently disabled from labor and from his avocation as a merchant and sales stable, and he has lost and will lose the earnings of his labor and his said business. He has incurred and will incur large expenses for medicines, medical and surgical attention and nursing, and is maimed for life, to his total damage in the sum of thirty thousand dollars, for which sum he prays judgment."

The defendant filed the following answer (caption and signatures omitted):

"Comes now the defendant in the above-styled cause, and, answering the plaintiff's petition herein, denies each and every allegation thereof. Wherefore, having fully answered, defendant prays to be discharged with its costs.

"For another and further defense to said petition defendant avers that if the plaintiff was injured, as charged in said petition, it was by reason of the carelessness and negligence of the plaintiff directly contributing thereto.

"Wherefore, having fully answered, defendant prays to be discharged with its costs."

The reply was a general denial.

The cause was tried September 6th and 7th, 1901, and resulted in a verdict and judgment for the plaintiff against the defendant for the sum of seven thousand dollars. Motions for a new trial and in arrest of judgment were overruled and exceptions saved, and an appeal was duly taken to this court.

At the close of plaintiff's evidence and again at the conclusion of all the evidence in the case defendant offered an instruction in the nature of a demurrer to the evidence, each of which was by the court overruled, and defendant duly excepted.

The plaintiff's evidence tended to prove that plaintiff's injuries were caused by a collision with one of defendant's electric cars at the junction of McNair and Victor streets, in the city of St. Louis; that an east-bound car on Victor street was passing the intersecting street, McNair, about 8 o'clock p. m., without any signal being given, and was running at the rate of twenty to thirty miles an hour. Plaintiff was riding horseback, southward, on his way home, along McNair street, which crossed that on which defendant's car line ran. Near the center of the junction of those streets hung an electric arc light with a hood overhead, casting a strong light in a limited circle below its position. Outside of that circle was a large area of dense shadow. The approaching car had a low headlight on the body of the car, and approached plaintiff on a rising grade.

On the northwest corner of McNair and Victor streets stood a two-story grocery store, on a building line, the usual distance back from the curb. Near the curb at the corner there were two tall trees with dense foliage, and the lowest branches of which were seven or eight feet above the ground. At ten feet distance north of the track, the side from which the plaintiff was coming, one could only see down Victor street about

fifty or sixty feet. Both of said streets were improved and were thirty-five feet in width, from curb to curb.

As plaintiff approached Victor street his horse was moving in a slow lope until about fifteen feet of the north crossing of Victor street, when he slowed up to a rate not much faster than a walk. He looked west, from which direction the cars ran, as there is but a single track on Victor street, and as the car crosses thereon it moves eastward. He saw nothing nor heard any bell or other signal, and proceeded to cross the track. The night was very dark, and, in the circling light of the electric arc lamp overhead, he was first apprised of the approaching car by his horse suddenly swerving away to the east, and was struck by the rapidly approaching car which emerged from the darkness beyond the range of the arc lamp, which illuminated only the intersection of the two streets. That the brilliant glare of that light limited by the shadow cast by the hood so dazzled him that his vision was obscured and made it difficult to see things beyond its rays of light.

Plaintiff's evidence also tended to show that he was quite severely injured, and that his horse was rendered valueless by reason of the injuries received by it. The evidence also tended to show that in consequence of the collision he lost the sum of $450 in money, and a ruby worth the sum of $55, and some other minor losses.

Defendant introduced evidence which tended to show that the plaintiff was guilty of contributory negligence, which will be noticed more particularly later on.

Whereupon the plaintiff prayed the court to instruct the jury as follows:

1. "If the jury find from the evidence in this case that on the 21st day of August, 1900, the defendant was operating the railway and car mentioned in the evi-

dence for the purpose of transporting persons for hire from one point to another in the city of St. Louis as a street railway company; and if the jury further find from the evidence that at said time McNair avenue and Victor street, at the places mentioned in the evidence, were open public streets within the city of St. Louis; and if the jury further find from the evidence in this case that on said day the plaintiff was riding his horse south on McNair avenue, in the city of St. Louis, at its intersection with Victor street, and that whilst riding at said place defendant's east-bound car, on Victor street, collided with plaintiff's horse, knocking him down and causing said horse and plaintiff to be rolled and crushed by said car and greatly injured upon his person, and said horse to be injured, and plaintiff to sustain a loss of money and of a ruby, and damage to his clothing; and if the jury find from the evidence in this case that the defendant's servants in charge of said car did not exercise ordinary care in running said car at and before said collision, and did not use such care to run said car at a moderate rate of speed, and to give warning of the approach of said car to said crossing; and if the jury find from the evidence that such neglect of defendant's servants to use ordinary care in running said car upon said crossing directly contributed to cause said collision and injury to plaintiff's person, and loss and injury to his property; and if the jury further find from the evidence that the plaintiff exercised ordinary care to look and listen for an approaching car, before and whilst going upon said crossing, and such care to avoid such collision and injuries, then the plaintiff is entitled to recover.''

2. ''If the jury find from the evidence in this case that on the 21st day of August, 1900, the defendant was operating the railway and car mentioned in the evidence for the purpose of transporting persons for hire

from one point to another in the city of St. Louis as
a street railway company; and if they further find
from the evidence that on said day McNair avenue and
Victor street, at the places mentioned in the evidence,
were open and public streets within the city of St.
Louis; and if the jury find from the evidence that on
the evening of said day the plaintiff was riding his
horse south on McNair avenue at the crossing with
Victor street in the city of St. Louis, and that whilst
he was on said crossing defendant's motorman and
conductor in charge of the east-bound car ran said car
upon said crossing and caused said car to collide with
plaintiff's horse and plaintiff, and drag and injure the
plaintiff and his horse, and cause the plaintiff to lose
his money and property, and his clothes to be injured;
and if the jury further find from the evidence that at
the time that said car ran upon said crossing and col-
lided with plaintiff and his horse defendant's motor-
man and conductor in charge of said car were causing
said car to be run at a speed in excess of fifteen miles
per hour, as provided by the ordinances of the city of
St. Louis, read in evidence; and if the jury further
find from the evidence that such excessive speed of
said car above that provided by the ordinances of the
city of St. Louis directly contributed to cause said col-
lision and plaintiff's injuries and loss and damage to
his property; and if the jury further find from the
evidence that the plaintiff exercised ordinary care to
look and listen for an approaching car upon said track,
and to avoid injury to himself and property whilst go-
ing to and upon defendant's track, then the plaintiff is
entitled to recover.''

3. ''The court instructs the jury that under the
ordinance of the city of St. Louis, read in evidence, it
was the duty of the defendant's motorman and con-
ductor in charge of the car mentioned in the evidence
as colliding with plaintiff and his horse, to have kept a

vigilant watch for persons either upon defendant's track or moving towards it, and upon the first appearance of danger to such person either upon the track or moving towards it, to stop said car within the shortest time and space possible, and if the defendant's motorman and conductor in charge of the said car failed to keep such vigilant watch, or failed to stop said car within the shortest time and space possible upon the first appearance of danger to the plaintiff, then the defendant was guilty of negligence; and if such negligence directly contributed to cause plaintiff's injury, and if the plaintiff himself exercised ordinary care to look and listen for an approaching car and to avoid injury therefrom, before and whilst going upon defendant's track, and was injured by said car, then plaintiff is entitled to recover.''

4.  ''If the jury find for the plaintiff and further find from the evidence that plaintiff's horse was injured by said collision, and that plaintiff lost currency from his pocket by said collision, and that plaintiff lost a jewel ruby by that collision, and that plaintiff's clothes were injured in said collision, they should assess in their verdict such damages not exceeding two hundred and twenty-five dollars, as they may believe from the evidence the plaintiff sustained by said injury to his horse, and also such damages not exceeding fifty-five dollars as the jury may believe the plaintiff sustained by the loss of his ruby, if the jury believe from the evidence he did lose his ruby; and also damages not exceeding four hundred and thirty dollars for the loss of currency from his pocket, if the jury believe from the evidence that the plaintiff did lose currency from his pocket, by reason of said injury; and also damages not exceeding thirty-two dollars and fifty cents for injury to his clothing, if the jury find from the evidence that the plaintiff did sustain injury to his clothing; and, also, if the jury find from the evidence

that the plaintiff sustained injuries to his person by reason of said collision they should assess his damages at such sum as the jury may believe from the evidence will be a fair compensation to the plaintiff: 1st, for any pain of body or mind which the jury may believe he has suffered or will hereafter suffer directly caused by said injuries; 2d, for any loss of earnings of his labor which the jury may believe from the evidence the plaintiff has sustained by reason of his injuries and directly caused thereby; 3rd, for any expenses necessarily incurred for medicines, surgical attention or nursing, which plaintiff has sustained by reason of said injuries and directly caused thereby, if the jury find from the evidence that the plaintiff did incur such expenses by reason of said injuries, the verdict not to exceed the sum sued for.''

Which instructions and each of them the court gave, to which action of the court in giving each and every of the instructions aforesaid, the defendant at the time duly excepted and saved its exception.

Thereupon the defendant prayed the court to instruct the jury as follows:

''1.    Under the pleadings and the evidence in this case the plaintiff is not entitled to recover, and your verdict must be for the defendant.

''2.    The court instructs the jury that plaintiff is not entitled to recover upon the ground that defendant's agents in charge of its car failed to keep a vigilant watch or failed to stop its car within the shortest time and space possible.

''3.    The court instructs the jury that plaintiff is not entitled to recover upon the ground that defendant's agents in charge of its car failed to sound the gong or to warn the plaintiff of the car's approach.

''4.    If the jury find from the evidence that plaintiff rode his horse along McNair avenue and approaching the car track in Victor street at such a high and

excessive rate of speed as to prevent plaintiff from stopping or checking his horse in time to avert collision with defendant's car, and that such conduct on his part caused or contributed to cause the collision and plaintiff's injuries, then plaintiff is not entitled to recover, and your verdict must be for the defendant.

"5. It is charged in the defendant's answer that the plaintiff himself was guilty of carelessness and negligence which directly contributed to cause his injuries. With respect to this averment you are instructed that notwithstanding defendant may have been guilty of negligence in this case, yet, if you find that the plaintiff was himself guilty of some act of negligence which directly contributed to cause his injuries and losses, then plaintiff is not entitled to recover. If, therefore, you find that the plaintiff caused the horse he was riding to attempt to pass in front of defendant's car when said car was so short a distance away as to prevent defendant's motorman in charge thereof, in the exercise of ordinary care with the means and appliances at hand, from stopping said car in time to avert collision, then the plaintiff has been guilty of contributory negligence and is not entitled to recover, even though you should find the defendant to have been negligent with respect to the rate of speed and the failure to give warning."

Which instructions the court refused to give, to which refusal of the court to give said instructions and each of them, the defendant at the time duly excepted.

The court gave to the jury at the request of the defendant the following instructions:

"6. The court instructs the jury that the plaintiff cannot recover for any loss sustained by the Atheline Tea Company on account of the injuries received by plaintiff.

"7. With respect to the allegation that defendant's agents were operating its car at a negligent rate

of speed, you are instructed that the defendant, under the ordinance, read in evidence, had the right to operate its cars at the place of collision at a rate of speed not to exceed fifteen miles an hour, and that it was not negligence for it to operate its cars within that limit, unless under the circumstances you find a person of ordinary care and prudence would not have done so. Therefore, before the plaintiff can recover upon the ground of excessive speed, you must find either that defendant's car was running at a rate of speed exceeding the ordinance limit, or at such a rate of speed under the circumstances as an ordinarily careful and prudent person would not have run said car, and not then, unless you find that said rate of speed was the direct, proximate and efficient cause of the collision and plaintiff's injuries and losses.

"8. With respect to the allegation that those in charge of the car failed to stop the car within the shortest time and space possible upon the first appearance of danger to the plaintiff, you are instructed that this principle of law does not apply unless the plaintiff was in a position of peril a sufficient length of time to have enabled those in charge of the car, by the exercise of ordinary care and by the use of such instrumentalities at hand as would occur to an ordinarily prudent person under circumstances of that kind to employ to enable him to stop the car and avert the collision. In other words, until the plaintiff was upon the track or in actual danger of collision with the car, those in charge of the car were not obliged to bring it to a stop.

"9. The court instructs the jury that it was the duty of plaintiff before riding his horse across defendant's track to look and listen for approaching cars, and if they believe from the evidence that plaintiff rode his horse over defendant's track without looking or listening for the cars, and that if plaintiff had looked or listened for the car he could have seen or

heard it approaching in time to have avoided injury therefrom, in the exercise of ordinary care on his part, then plaintiff cannot recover in this action.

"10. The plaintiff sues in this case to recover damages on account of injuries and losses alleged to have been sustained in a collision with defendant's car. The acts of negligence charged against the defendant are as follows: 1st, that defendant operated its car at an unlawful rate of speed, to-wit, twenty-five miles an hour; 2nd, that defendant's agents in charge of its car failed to keep a vigilant watch for vehicles and persons on foot; 3rd, that said defendant's agents failed to stop said car in the shortest time and space possible; and 4th, that defendant's agents in charge of its car failed to sound the gong or to warn plaintiff of the approach of said car. With respect to the foregoing allegations of negligence, you are instructed that the burden is upon the plaintiff of establishing to your satisfaction by the preponderance or greater weight of the evidence that some one or more of such acts of negligence charged was committed by the defendant, and that such one or more of said acts of negligence, so established, were the direct, proximate and efficient cause of the collision and plaintiff's injuries and losses, and unless he has done so, he is not entitled to recover, and your verdict must be for the defendant.

"11. The court instructs the jury that even though they believe from the evidence that defendant was guilty of negligence in failing to ring its gong and in running its cars at an excessive rate of speed, yet, if they also find that plaintiff rode his horse across defendant's track without listening or looking for an approaching car, or approached defendant's track at an excessive rate of speed or so fast as to be unable to stop his horse in time to avoid the accident after it became possible in the exercise of ordinary care for him

to see or hear, then plaintiff cannot recover and their verdict must be for the defendant.

"12. With respect to the allegation that defendant's agents failed to warn the plaintiff of the approach of its cars you are instructed that such warning is not required under all circumstances. If the bell of the car was sounded, the plaintiff is not entitled to recover upon that ground; but even if it was not sounded, this did not exonerate the plaintiff from looking and listening for the approach of the car, if by looking and listening he could have seen or heard it, and if he could by looking or listening have seen or heard the cars approaching in time to have avoided collision with it, in the exercise of ordinary care upon his part, he is not entitled to recover upon the ground of a failure to give warning."

Thereupon the court amended defendant's refused instructions numbered four and five, and gave the same, as amended, of its own motion.

"4. If the jury find from the evidence that the plaintiff rode his horse along McNair avenue, and approaching the car track in Victor, at such a high and excessive rate of speed as to prevent plaintiff from stopping or checking his horse in time to avert collision with defendant's car and that this was negligence on part of plaintiff and that such conduct on his part caused or contributed to cause the collision and plaintiff's injuries, then plaintiff is not entitled to recover, and your verdict must be for the defendant.

"5. It is charged in the defendant's answer that the plaintiff himself was guilty of carelessness and negligence which directly contributed to cause his injuries. With respect to this averment, you are instructed that, notwithstanding the defendant may have been guilty of negligence in this case, yet if you find that the plaintiff was himself guilty of some act of negligence which directly contributed to cause his in-

juries and losses, then plaintiff is not entitled to recover. If, therefore, you find that the plaintiff negligently caused the horse he was riding to attempt to pass in front of defendant's car when said car was so short a distance away as to prevent defendant's motorman in charge thereof, in the exercise of ordinary care, with the means and appliances at hand, from stopping said car in time to avert collision, then the plaintiff has been guilty of contributory negligence, and is not entitled to recover, even though you should find the defendant to have been negligent with respect to the rate of speed and the failure to give warning."

To which action of the court in amending said instructions, and each of them, and giving same as amended, defendant at the time duly excepted, and saved its exception.

I. The first assignment of error made by appellant was to the action of the court in refusing to compel the plaintiff to elect as to which of the two causes of action stated in the petition he would go to trial upon.

The contention of the appellant is that there are two causes of action stated in the one count of the petition, namely; one arising *ex delicto* and the other *ex contractu;* the former being based upon the allegation of common law negligence, and the latter for the violation of the ordinance pleaded, which it is claimed could create a civil liability only by virtue of a contract of acceptance on the part of the defendant, the violation of which would be a breach of contract and not the commission of a tort.

Conceding for the sake of argument that appellant's major premise is correct, without deciding it, yet, under the well-settled rules of practice in this State, the right to require respondent to elect was waived by not standing upon the motion to elect. The

213 Sup—30

action of appellant in answering over and going to trial upon the merits of the case amounted to an abandonment of the motion to elect, and it cannot be again successfully raised in this court. [White v. Railroad, 202 Mo. 539.].

II. It is next insisted by appellant that the court erred in not sustaining its demurrer to the evidence.

The real ground of this contention is that respondent's own evidence showed that when he was within ten or twelve feet of the car track, and that by looking he could have seen the approaching car which struck him sixty or seventy feet away, and in ample time to have averted the injury had he so looked, and having failed to do so he was guilty of such contributory negligence as should prevent a recovery in this case. If that was all the evidence in the case bearing upon that point, then there would be much force in appellant's contention; but that is not all the evidence upon that point, as disclosed by the record. His evidence also tended to show that there were two tall trees with long branches and heavy foliage standing near the curb line which somewhat obstructed his view in the direction in which the car was approaching; that an arc lamp was suspended above the crossing where the accident occurred with a hood on it which kept its brilliancy within a limited circle, yet the rays of light therefrom extended as far as the intersection of the two streets; that a man being inside of that area of light, illuminating the four corners of the streets and all the space between them, would be conspicuous for a long distance to the motorman of a car approaching from the darkness, while the vision of plaintiff inside the blaze of light would be dazzled in such a way as to make it difficult, if not impossible, for him to see beyond the limits of the light in which he stood.

Under those conditions the respondent testified that he looked for approaching cars, but saw none until

the one which struck him was right on him, so close that he had no time or opportunity to get out of its way, which was approaching at a speed of from twenty-five to thirty miles an hour, and without any signal being given of its approach.

Under that state of the evidence we are of the opinion that a case was made for the jury to pass upon, and that the court should not declare as a matter of law that respondent was guilty of such contributory negligence as would prevent a recovery. [Hauck-Hoerr Bakery Co. v. Railroad, 127 Mo. App. 190.]

III. It is next insisted that the court erred in admitting evidence as to the loss of the money and jewelry sued for.

While the evidence introduced tending to prove the causal connection between the loss of the money and jewelry and the collision was not very strong, yet we are clearly of the opinion that if the collision was the real cause of the loss, and that plaintiff was in no manner responsible for the collision, then the defendant is liable to him for the loss. This is so elementary that a citation of authorities in support thereof would be useless. The fact that the evidence introduced upon that subject was unsatisfactory goes to the weight of the evidence and not to its admissibility. And we might add, in this connection, that the objectionable features pointed out by appellant in the instructions given upon this same subject can be obviated upon the next trial by making then more specific in requiring the jury to find that the loss of the money and jewel was the direct result of the collision.

IV. Defendant complains of the first and second instructions given by the court on behalf of the plaintiff. It is claimed that they are erroneous for the reason that each of them authorizes the jury to find for the plaintiff if they believed from the evidence that

the facts predicated therein "directly contributed to cause said collision," etc. I will consider only the first instruction for the reason that what is said as to the first will apply equally well as to the second.

The words quoted from the instruction do not tell the jury that if they found the facts stated therein caused the collision and the consequent injury then they would find for the plaintiff, but told the jury that if they found from the evidence "that such negligence of defendant's servants to use ordinary care in running said car upon said crossing directly contributed to cause said collision and injury to plaintiff's person and loss and injury to his property; and if the jury further find from the evidence that the plaintiff exercised ordinary care to look and listen for an approaching car before and whilst going upon said crossing, and such care to avoid such collision and injuries, then the plaintiff is entitled to recover."

Under either of those instructions the jury might well have found, and doubtless did find, that plaintiff was not guilty of contributory negligence, but that he was injured by the concurring negligence of the servants in charge of the car, and some unknown cause not stated in the petition or shown by the evidence. Clearly that was error. The instruction should have been so drawn as to have told the jury that before they could find for plaintiff they must find that the negligence of the defendant *caused* and not merely *contributed* to the injury. Many things might be suggested which contributed to the injury, not stated in the petition or mentioned in the evidence; and there is nothing in the instruction which would prevent the jury from considering such outside things.

In other words, there is nothing in the instruction which told the jury that before they could find for plaintiff they must first find that its negligence *caused the injury;* nor does the instruction limit the

jury to a consideration of the acts of negligence stated in the petition but leaves them to wander into the unknown field of speculation to find out, if possible, what fact it was that *must have existed that contributed* to defendant's negligence which caused the injury. And there is nothing in the instruction which tells the jury what the fact was that existed which contributed to defendant's negligence in causing the injury nor when or how it contributed therewith. I am unable to conceive of an instruction which is more indefinite in its meaning, or more calculated to mislead the jury, than the one under consideration.

Learned counsel for respondent practically concedes the error above mentioned but attempts to evade the effect thereof by saying that the language complained of in his instructions is found in appellant's refused instruction No. 5; and having thereby invited the court to commit the error pointed out, it will not now be heard to complain of that error.

Where the court has adopted a theory of a case which is erroneous at the instance or request of one or both of the parties to a suit, then the party or parties inviting the error will not be permitted to urge that error for a reversal of the judgment in this court. He or they will not be permitted "to blow hot and cold" in that matter in the trial of law suits. They must stand or fall in this court upon the theory assumed by them in the court below. While the above rule of practice is academic, yet we are unable to see its application in this case, for the reason that defendant's instruction No. 5 was a correct declaration of the law of contributory negligence. It told the jury that if they believed from the evidence "that the plaintiff was himself guilty of some act of negligence which directly contributed to cause his injuries and losses," then he was not entitled to recover. There is no error in this instruction, nor is there anything therein which invited

or suggested to the court or counsel for respondent to commit the error pointed out in said first and second instructions.

V. The action of the court in admitting in evidence over the objection of appellant the ordinances mentioned in the petition, known as the ''speed and watch ordinances'' is also assigned as error.

The reason for this assignment, as stated, is that the city of St. Louis has no power to create by ordinance a civil liability of citizens *inter sese* in the absense of a contract accepting the ordinance.

It is sufficient answer to that contention to say that the appellant is in no position to raise that question in this case, for the reason that it tried its case upon the theory that the city possessed that power, and introduced in evidence an ordinance of the city authorizing the company to run its cars at a rate of speed at the point of the injury not to exceed fifteen miles an hour. And by asking instruction No. 7 recognized the authority to pass the watch ordinance. Appellant having tried its case upon that theory it will not now be permitted to shift positions and try its case upon a different theory from that upon which it was tried below.

There are certain other assignments of error presented but they are of such minor importance that they do not merit special mention.

For the error mentioned in paragraph four of this opinion, the judgment is reversed and the cause remanded for a new trial.

All concur except *Valliant, P. J.,* absent; *Lamm, J.,* in result.