ERNEST KREHMEYER v. ST. LOUIS TRANSIT COMPANY and UNITED RAILWAYS COM-PANY, Appellants.

In Banc, May 22, 1909.

1. **NEGLIGENCE:** Humanitarian Doctrine: Contributory Negli-gence: Both Submitted. Where the evidence on the part of plaintiff tended to show his injuries were due to the defend-ant's negligence, and the evidence on the part of the defend-ant tended to show they were due to his own contributory negli-gence, and both sides asked instructions submitting these issues to the jury, plaintiff by asking an instruction entitling him to recover under the so-called humanitarian doctrine thereby confessed that he had been guilty of contributory negli-gence, and plaintiff's instructions were inconsistent with de-fendant's.

*Held*, by VALLIANT, C. J., with whom GANTT and LAMM, JJ., concur, that plaintiff had a right to recover if his injuries were due to defendant's negligence and he is not barred by his own contributory negligence, and also if being negligent himself defendant saw his peril in time by the exercise of ordinary care to have saved him, but did not. The two positions are not antagonistic, or inconsistent, and plaintiff by asking an instruction on the humanitarian ground was not precluded from submitting to the jury the question of whether or not he was guilty of contributory negligence.

2. ———: Contributory: Case for Jury. Where there was evidence that defendant's negligence caused plaintiff's injury, and the evidence as to his contributory negligence is conflicting, the case should go to the jury even though the evidence tending to establish plaintiff's contributory negligence was the testimony of his own witness.

*Held*, by GRAVES, J., in a separate opinion, that under the facts of this case the court should have declared, as a matter of law, that plaintiff was guilty of contributory negligence.

3. ———: ———: ———: Veracity of Own Witness. Plaintiff introduced defendant's motorman as a witness and he testified to the effect that plaintiff drove upon the track immediately in front of the car which he saw was bearing down upon him, when by stopping he could have let the car pass, and thus have avoided injury. Plaintiff and all the other witnesses testified that when he drove into the street the car was a full block away, that it was going unusually fast and did not slacken until it struck the wagon, which was loaded high with boxes. *Held*, that plaintiff cannot question the veracity of his own witness, but he is not bound by everything he said, and he had the right to show by other witnesses that the motorman was mistaken; and then it became the duty of the jury to decide which witnesses were correct, and the court did not err in refusing, because of the motorman's testimony, to declare as a matter of law that plaintiff was guilty of contributory negligence.

4. ———: ———: Humanitarian Rule. Where a part of plaintiff's wagon was on the track when the car was yet one hundred and fifty feet away, and it could have been stopped in 64 feet, the defendant is liable under the humanitarian doctrine.

5. ———: Contributory Cause: Contradictory Instructions. Where there was no contributing cause of plaintiff's injury in the case except it were his own negligence, this clause in his instruction given, namely: "If the jury find or believe from the evidence that the defendant's negligence in running its street

Krehmeyer v. Transit Co.

car at a rate of speed in excess of eight miles an hour directly contributed to cause said collision between the said street car and the wagon which plaintiff was driving and to cause the injury of plaintiff," is in direct conflict and inconsistent with this clause contained in the same instruction, to-wit, "And if plaintiff looked and listened for an approaching car from a point where he could see it approaching, and did see it before driving on the track, and that in attempting to cross said track, and in crossing it, he was exercising ordinary care for his own safety, then plaintiff is entitled to recover." Said instruction is also in conflict with those given for defendant telling the jury that if plaintiff's negligence contributed to his injury he could not recover. There being no evidence of any other contributing cause except plaintiff's negligence, the instructions for both sides when read together must have led the jury to conclude that if defendant's negligence contributed with plaintiff's negligence to cause the injury, plaintiff was entitled to recover. [VALLIANT, J., dissenting.]

6. ———: ———: ———: Contributory Negligence and Independent Cause. The defendant is liable whether the injury resulted solely from its own negligence, or from that negligence concurring with some other independent cause or the act of God. But where the negligence of the defendant and the negligence of the injured party concur to cause the accident, the defendant is not liable. If the negligence of the driver of a wagon across a street car track contributed with the defendant's negligence in running the car at an excessive rate of speed to cause the injury to the driver, the company is not liable.

7. ———: ———: ———: ———: Slippery Street: Humanitarian Doctrine. If the driver of a heavily loaded wagon, who was attempting to cross a street car track, got on the track with his wagon while the car, running at an excessively high rate of speed, was yet one hundred and fifty feet away, and was injured because of the failure of the motorman to stop the car in time to avoid striking his wagon, the defendant cannot excuse itself by showing that the track was slippery, for that is an independent cause, and does not excuse the negligent high speed; and in such case, if the slippery track is injected into the case as a defense, it is not error for plaintiff's instructions to tell the jury that if such independent cause "directly contributed to cause said collision" defendant is liable if the driver at the time was in the exercise of ordinary care. But where that defense is not made a part of the case, and nothing is said in the instructions on either side about any independent cause, it is error for plaintiff's instruction to tell the jury that if defendant's negligence in running the car at the excessive speed "contributed directly to cause said collision"

220 Sup—41

Krehmeyer v. Transit Co.

he may recover, and also to permit plaintiff to recover under the humanitarian rule, that is, to recover if, notwithstanding the driver was guilty of contributory negligence, yet if the motorman saw him in peril in time by the exercise of ordinary care to stop the car and thus avoid injuring him, but did not. Such instructions, when read together, shut out defendant's defense of contributory negligence, and practically told the jury that if plaintiff's contributory negligence "directly contributed to cause said collision," yet if plaintiff was exercising ordinary care, he was entitled to recover, for the reason there was no other contributing cause to which defendant's negligence could have contributed. The instructions as a whole placed defendant in an inextricable dilemma: On the one hand, if it offered evidence of the slippery condition of the tracks for the purpose of showing the motorman was not negligent in failing to stop the car after he saw the driver's perilous position, that evidence could be seized upon and argued to the jury by plaintiff's counsel as an independent contributing cause which would not excuse defendant; on the other, if defendant declined to show the slippery condition of the track, then the plaintiff could contend that the car could have been stopped by the exercise of ordinary care in time to have avoided the collision. So, under such instructions defendant could not successfully defend even though it be conceded that the driver was guilty of contributory negligence, which he must concede under the humanitarian doctrine, and even though it be conceded that on account of the silppery track the motorman could not stop the car after he discovered the driver's peril, for the first instruction practically tells the jury that if the excessive speed "directly contributed to cause the collision" and the driver was exercising ordinary care plaintiff could recover.

*Held*, by GRAVES, J., in a separate opinion, that, where there is no evidence of any outside cause which in conjunction with defendant's negligence tended to produce the injury, it is error to give an instruction using the words "contributed to cause the injury" or words of similar import; and as in this case there was evidence of a slippery track, the jury might have been misled to believe that what was intended by the words "contributed to cause the injury" was the slippery track. But owing to the difference in facts the instruction is not open to the same condemnation as a similar instruction in the Hof Case, 213 Mo. 445.

*Held*, by VALLIANT, C. J., dissenting, with whom GANTT and LAMM, JJ., concur, that the instruction authorized the jury to hold the defendant liable only when they found defendant's negligence "directly contributed to cause said collision," and does not hold it liable because of the acts of others or of conditions for whose existence it is not liable, and there was no error in the instruction which used those words.

8. ———: Instruction: Humanitarian Doctrine: Safety to Passengers. Where there was no evidence tending to show that the motorman did not quicker stop the car because of hazard to his passengers or that he was in anywise influenced by attention to their safety, an instruction permitting plaintiff to recover if "the motorman could have averted the collision by stopping the car," without adding the words "with safety to the passengers," is not error.

9. ———: Liability of Lessor of Street Railway. Where the United Railways Company owned the street railway and its equipment and before the injury to plaintiff had leased them to the transit company, which was in possession and operating the cars, and there is no other evidence to connect it with plaintiff's injury, the lessor company is not liable for the injury done by a street car.

Appeal from St. Louis County Circuit Court.—*Hon. Jno. W. McElhinney,* Judge.

REVERSED IN PART AND REVERSED AND REMANDED IN PART.

*Boyle & Priest, T. E. Francis* and *Morton Jourdan* for appellants.

(1) The court erred in giving instructions 1, 2 and 3, which directed a verdict for plaintiff if the jury believed the car in question was operated at a negligent rate of speed, when plaintiff asked and was given an instruction 4, permitting the jury to return a verdict for him under the "Last Chance" Doctrine, which of necessity admitted that his own negligence contributed to create his position of peril and, therefore, barred a recovery by him on the ground of defendant's primary negligence in running the car at an excessive rate of speed. Ross v. Railroad, 113 Mo. App. 605; Cole v. Railroad, 121 Mo. App. 605; Grout v. Railroad, 125 Mo. App. 552; Woods v. Railroad, 188 Mo. 258; Roenfeldt v. Railroad, 180 Mo. 554. (2) The court erred in giving instructions 1, 2 and 3, which directed a verdict for plaintiff if the jury believed the car was operated at a negligent rate of speed, because: (a) Plaintiff's own testimony convicted him of contribu-

tory negligence as a matter of law. He drove upon the track immediately in front of the car which he saw 'was bearing down upon him, when by stopping his horses he could have let it pass and thereby have averted the collision. He was not, therefore, entitled to recover on the theory that defendant's car was operated at a negligent rate of speed. Ries v. Railroad, 179 Mo. 1; Reno v. Railroad, 180 Mo. 469; Roenfeldt v. Railroad, 180 Mo. 554; Green v. Railroad, 192 Mo. 131; Schmidt v. Railroad, 191 Mo. 215; Walker v. Railroad, 193 Mo. 455; Sanguinette v. Railroad, 196 Mo. 466. (b) If plaintiff was entitled to recover at all, it was only on the theory that, after he had placed himself in a position of danger, defendant's motorman could have stopped the car by the exercise of ordinary care, with safety to the passengers, in time to have averted the collision, and failed to do so. This theory was submitted to the jury in instruction 4. The jury may have refused to find for plaintiff under this instruction and found for him on the theory that the car was operated at a negligent rate of speed (under instructions 1, 2 and 3), a recovery on which theory was barred by his contributory negligence. Ross v. Railroad, 113 Mo. App. 605; Cole v. Railroad, 121 Mo. App. 605; Grout v. Railroad, 125 Mo. App. 552; Woods v. Railroad, 188 Mo. 258; Roenfeldt v. Railroad, 180 Mo. 554. (3) Plaintiff's instructions 1 and 3 are erroneous in that they permitted the jury to find a verdict for plaintiff, even though the jury believed the negligent acts therein hypothesized only contributed to cause his injuries. Hof v. Railroad, 111 S. W. 1166; Smith v. Hardesty, 31 Mo. 411. (4) Plaintiff's instruction 4 is erroneous because it permitted a finding for plaintiff if the jury believed the motorman could have averted the collision by stopping the car, instead of directing a finding for plaintiff, as it should have done, in the event the jury believed the car could have been stopped, with safety to the passengers, in

time to have avoided the collision.  Bell v. Railroad, 72 Mo. 60.

*Henry H. Oberschelp* and *Seddon & Holland* for respondent.

(1)  The court did not err in giving instructions 1-3.  The fact that respondent asked instruction 4 based on the humanitarian rule did. not constitute an admission on his part that he was guilty of contributory negligence.  (2)  The court did not err in giving instructions 1, 2 and 3 at the instance of respondent. Respondent was not guilty of contributory negligence as a matter of law.  Heintz v. Railroad, 115 Mo. App. 667; Murray v. Railroad, 108 Mo. App. 501; Sommers v. Railroad, 108 Mo. App. 319; Imkamp v. Railroad, 108 Mo. App. 655; Deitering v. Railroad, 109 Mo. App. 524; Powers v. Railroad, 202 Mo. 267; Peterson v. Railroad, 114 Mo. App. 374; Priesmeyer v. Railroad, 102 Mo. App. 518; Joyce v. Railroad, 111 Mo. App. 565; Hartman v. Railroad, 112 Mo. App. 439; Hall v. Railroad, 124 Mo. App. 661; Parker-Washington v. Railroad, 109 S. W. 1073.  (3)  The court did not err in giving instructions 1 and 3 at the instance of respondent.  Said instructions fulfilled the requirements of the law in predicating a recovery on the negligence of appellant directly contributing to cause the injury of respondent, provided the latter exercised ordinary care.  Riska v. Railroad, 180 Mo. 184; Bassett v. St. Joseph, 53 Mo. 290; Brash v. St. Louis, 161 Mo. 433; Bragg v. Railroad, 192 Mo. 331; Vogelsang v. St. Louis, 139 Mo. 136; Harrison v. Electric Light Co., 195 Mo. 606; Smith v. Fordyce, 190 Mo. 21.  (4)  The court did not err in giving instruction 4 at the instance of respondent.  Said instruction properly stated the humanitarian rule in allowing a recovery if appellants' motorman, after he saw respondent in a position of danger, failed to exercise ordinary care

to avoid injuring him. Rapp v. Railroad, 190 Mo.
144; Eppstein v. Railroad, 197 Mo. 720; Chamberlain
v. Railroad, 133 Mo. 587; Sullivan v. Railroad, 117 Mo.
214.

WOODSON, J.—I have adopted the statement of
the case as made by VALLIANT, J., in his opinion de-
livered in Division One, which is as follows:

Plaintiff recovered a judgment for $15,000
against both the defendants as damages for personal
injuries suffered by him in consequence of a wagon,
in which he was riding as driver of the team of horses,
being struck by a street car which was being operated
at the time by the St. Louis Transit Company, on a
street railway track belonging to the United Railways
Company. From that judgment both defendants have
appealed.

The petition charges that the defendants owned
and operated the street railway and cars. The acts
of negligence charged are: (1) Running the car at
a speed in excess of eight miles an hour in violation of
a city ordinance. (2) Operating the car at a rate of
speed that was negligent under the circumstances.
(3) Failing to sound the gong. (4) Negligently fail-
ing to stop the car to avoid the collision after the
motorman saw the position of peril in which plaintiff
was.

The answer was a general denial and a plea of
contributory negligence.

There is not much, if any, dispute about the facts.
The plaintiff was driving a two-horse wagon loaded
with empty boxes. He was sitting on the driver's seat
in the wagon directly over the front wheels, and about
four feet behind the horses. There were flanges on
the sides of the wagon; the boxes were piled up high
behind the driver and on each side of him, extending
above his head about two feet, intercepting his view on
either side. The length of the outfit from the rear of

the wagon to front of the horses was about twenty-five feet.

Carr street runs east and west. There was a single track street railway in Carr street, on which the cars were operated from west to east. Going east a car would cross in succession Fifteenth, Fourteenth and Thirteenth streets. This accident occurred at the intersection of Thirteenth street. From Fourteenth to Thirteenth street the distance is 310.7 feet. Half way between Fourteenth and Thirteenth is an alley. Carr street is sixty feet wide, with a sidewalk twelve feet wide on each side, leaving a roadway from curb to curb thirty-six feet wide. The houses on the north side of the street came out to the building line.

Thirteenth street was at that time the only street between Fifteenth and Broadway (which by its number would be Fifth street) on which there was no railway track and it was a much traveled street. The plaintiff was coming from a point north of Carr street driving south on Thirteenth. When he got to the building line on the north side of Carr street he looked to the east and to the west and he saw a street car at Fourteenth street coming east, his horses were going at a walk and he testified that he thought he had time to cross the track in safety, therefore proceeded on his way. When the front part of his wagon was on the track he again saw the car, it was then at the alley in the middle of the block between Fourteenth and Thirteenth streets, about one hundred and fifty feet distant; after that, because the boxes were piled up on both sides of him, he could not see the car again, but he still thought, as he testified, that he would cross in safety. But before the wagon had cleared the track the car struck the rear part of the hind wheel with such force that the plaintiff was thrown to the street and some of the boxes fell on him. He was seriously injured.

The testimony tended to show that the car was going unusually fast, that it was going twice as fast as usual at that point; the rate was estimated at fifteen to eighteen miles an hour. The testimony was that it was going with such momentum that after striking the wagon it went a considerable distance into the next block.

The plaintiff called the defendant's motorman as a witness, presumably to prove that it was a car of the transit company and that he was in the service of that company, but he was also asked about the equipment of the car and to give his understanding as to how the accident occurred. He testified that the car was well equipped, brake, sandbox, reverse and all in good order. He testified that when he first saw the wagon and team they were just coming into Carr street, and he was about two car-lengths distant, that is, about sixty-four feet; he sounded the gong and then the plaintiff looked at him, the horses had got into the street and about ten or fifteen feet from the track. "I was sounding the gong; and I saw he was going to strike the car; I already had the brake partly set; I saw the car was sliding and I reversed the power and shoved the lever down and then the car slid into the wagon." He had already stated that the track was muddy and slippery and that there was a down grade. "Q. When you were two car-lengths away, I understand you to say you then realized there would be a collision, and then you set your brakes? A. Yes, sir. . . . I could not have stopped the car quicker than I did. Q. How many feet more would have been required? A. It would have taken about three feet more." The testimony of plaintiff's other witnesses was to the effect that the speed of the car was not reduced any from Fourteenth street to the point of collision, and that after the collision it ran a considerable distance into the next block.

The city ordinance limiting the speed of the car to eight miles an hour was read in evidence, also the Vigilant Watch Ordinance. A lease from the United Railways Company to the transit company of its tracks and equipments was read in evidence. This was the same lease that was in question in the case of Moorshead v. United Railways Co., 203 Mo. 121.

At the close of the plaintiff's case each of the defendants asked an instruction in the nature of a demurrer to the evidence which was refused and exception taken. Defendants introduced no evidence.

In three of the instructions given for the plaintiff the jury were authorized to find the defendant guilty of negligence based on the speed of the car; in the first instruction it was said that if the car was going faster than eight miles an hour it was going in violation of the city ordinance and it was, therefore, negligence on the part of the transit company; in the second and third it was said that if the car was going at a rate of speed which under the circumstances was dangerous the act was negligence. And in those three instructions if the jury should find the defendant transit company guilty of negligence in the particulars there mentioned and that such negligence caused (or, as said in the first and third instructions, contributed to cause) the accident, and if the jury should find that the plaintiff was at the time exercising ordinary care to avoid injury to himself, the verdict should be for the plaintiff against the transit company.

The fourth instruction was given on the humanitarian doctrine. It was in effect that if the motorman saw the plaintiff in a condition of peril, likely to be struck by the car, in time by the exercise of ordinary care to have avoided the collision and failed to do so, the plaintiff was entitled to recover, notwithstanding the jury might find that the plaintiff was guilty of negligence in attempting to cross the track at the time and under the circumstances.

The instructions are long and it is unnecessary to copy them in full, because their substance is sufficiently stated above to enable us to appreciate the points presented by appellant transit company in relation to them.

## OPINION.

I.   Counsel for appellant's first insistence is, that by asking instruction numbered 4, submitting to the jury the so-called humanitarian doctrine, under the facts of this case, plaintiff thereby confessed that he was guilty of negligence, and that therefore he had no right to instructions numbered 1, 2 and 3 which authorized a verdict in his favor on a finding by the jury that he was not guilty of contributory negligence.

In our judgment that insistence was well taken. The evidence on the part of the respondent tended to show that he was injured in consequence of the negligence of the appellant, and that of the appellant tended to show he was injured in consequence of his contributory negligence.

It is evident, according to this record, that respondent was injured either with or without his concurring negligence; if with it, then he was not entitled to a recovery, except as hereinafter stated; but if without it, then he was entitled to a recovery. By instructions numbered 1, 2 and 3 the court told the jury that if they believed the respondent was injured in consequence of appellant's negligence then they would find for him, and by instruction numbered 4 the court told the jury that notwithstanding his negligence placed him in a position of peril, yet he would be entitled to a recovery, and the jury should find for him, provided they further believed from the evidence that the appellant by the exercise of ordinary care, after

discovering his perilous position, etc., could have averted the injury, etc.

Before the respondent could recover upon the former theory he must have been free from contributory negligence, but upon the latter the law excuses his negligence.

Those instructions when read together are clearly inconsistent with those of appellant submitting to the jury respondent's contributory negligence, and it would therefore be impossible for the jury to find for the appellant upon either theory of the case presented to them, for the reason that under the evidence as disclosed by this record the jury could have found for the respondent under instructions numbered 1, 2 and 3, if he was free of negligence, and they could also have found for him under instruction numbered 4, even though his injury was the result of his contributory negligence, and thereby absolutely have ignored the question of his contributory negligence as submitted to the jury by appellants' instructions, which were the counterparts of instructions numbered 1, 2 and 3 given for respondent.

II. It is next contended by counsel for appellant that the circuit court erred in submitting the case to the jury, for the reason assigned, that the evidence conclusively shows that the respondent was guilty of negligence which directly contributed to his injury, which under the law bars his right to a recovery. We are unable to lend our assent to that contention. In our judgment, while there was testimony tending to prove respondent was guilty of contributory negligence, yet we are also of the opinion that the evidence was ample to carry the case to the jury, and justified the court in submitting the case to the triers of the facts.

III. Appellant also challenges the correctness of instructions numbered 1 and 3 given on behalf of

respondent, for the reason hereinafter stated; and in order to clearly understand the objection lodged against these instructions it is all important that the issues joined by the pleadings should be borne in mind, which I will here briefly state.

The petition charges the appellant with four acts of negligence, in consequence of which respondent alleges he was injured. The negligent acts charged are as follows:

First. That it ran the car which struck and injured him at a rate of speed in excess of eight miles an hour, in violation of an ordinance of the city of St. Louis.

Second. That it operated said car at such high rate of speed as, under the facts and circumstances of the case, amounted to negligence at common law.

Third. That it negligently failed to sound the gong on the car, or to give him any other warning of the car's approach.

Fourth. That it negligently failed to stop the car in time to avert the injury after the motorman in charge thereof saw the perilous position in which respondent was placed.

The answer was a general denial, and a plea of contributory negligence; and the reply was a general denial of the new matter stated in the answer.

Those instructions read as follows:

"1. The court instructs the jury that if you believe and find from the evidence in this case that on the first day of November, 1902, defendant, the St. Louis Transit Company, was operating the east-bound street car mentioned in the evidence from one point to another within the city of St. Louis and along Carr street, and that Carr street and Thirteenth, at said time, were intersecting, open, public streets within the city of St. Louis, each about sixty feet wide; and if the jury further believe and find from the evidence that on said date the plaintiff was driving a two-

horse team and wagon southwardly along said Thirteenth street and across said Carr street, and that whilst doing so and whilst crossing the track of the said St. Louis Transit Company, the said wagon was struck by an east-bound car, and that as a direct result thereof plaintiff was thrown out of said wagon and injured; and that the said car ran eastwardly on said Carr street between Fourteenth and Thirteenth streets, at a rate of speed in excess of eight miles an hour; then and in that case the running of said street car at such a rate of speed was in violation of the ordinance read in evidence, and was negligence on the part of the said St. Louis Transit Company, and if the jury further believe and find from the evidence that such negligence directly contributed to cause said collision between the said street car mentioned in the evidence and the wagon which plaintiff was driving and to cause the injury of plaintiff, and that plaintiff looked and listened for an approaching car as he came into Carr street at a point where he could see the car approaching, and did see it before driving on the track, and that in attempting to cross said track and in crossing it, and while crossing he was exercising ordinary care for his own safety, then and in that case the plaintiff is entitled to recover against defendant, the St. Louis Transit Company, and you will find your verdict for the plaintiff.

"3. The court instructs the jury that if you believe and find from the evidence in this case that on the first day of November, 1902, defendant, St. Louis Transit Company, was operating the east-bound car mentioned in evidence from one point to another within the city of St. Louis, along Carr street, and that Carr street and Thirteenth street at said time were intersecting, open, public streets within the city of St. Louis, and that each was about sixty feet wide; and if the jury further believe from the evidence that on said day the plaintiff was driving a two-horse team

and wagon southwardly across said Carr street and across the track of defendant, where said street is intersected by Thirteenth street, and while so driving plaintiff's wagon was struck by the said east-bound car, and that as a direct result thereof plaintiff was thrown out of said wagon and was injured; and if you further find from the evidence that said street car was being operated by the motorman in charge thereof, at a rapid and dangerous rate of speed under the circumstances, and that the said motorman in so operating said car at said rate of speed was negligent, and that such negligence of the said motorman directly contributed to cause said collision and said injury to the plaintiff; and if you further believe from the evidence that the plaintiff looked and listened for an approaching car as he drove into Carr street at a point where he could see the car approaching and did see it before he drove on the track, and that in attempting to cross said track and in crossing it and while crossing it, plaintiff was exercising ordinary care to avoid injury to himself, then and in that case the plaintiff is entitled to recover against the defendant, St. Louis Transit Company.''

Before beginning the discussion of the instructions mentioned, I wish to state, first, that counsel for appellant in neither brief nor oral argument denies the law to be, that, if the evidence in the case had shown respondent had been injured in consequence of the concurring negligence of the appellant and that of some third person, or with some other independent concurring or succeeding cause, it would be liable in damages therefor.

Such a contention at this day, in the history of our jurisprudence, would be late if not novel. That rule is so old and well settled that it is justly called hornbook law, and, consequently, I have no complaint whatever to urge against it; but, upon the contrary, I indorse fully what has been said by this court and

the text-writers upon that subject. But what I do
object to is the application of that rule of law to the
facts of this case, when there is not a scintilla of
evidence contained in this record which tends in the
remotest degree to show that respondent's injury was
caused by the concurring negligence of appellant and
that of some third person, or that his injury was the
result of the successive acts of negligence of appellant,
and that of some third person, or that his injury was
due to appellant's negligence concurring with some
outside and independent cause. There being no such
evidence disclosed by the record in this case, this
rule as contended for in the third paragraph of my
able brother's opinion, however correct it may be as
an abstract proposition of law, has no application
to the facts of this case; but had there been such
evidence, then, clearly, this case would have fallen
within that principle, which is aptly illustrated in the
case of Bassett v. St. Joseph, 53 Mo. 290. In that case
the city had negligently permitted a deep excavation
to remain unguarded, near the sidewalk upon which
plaintiff was walking; and while passing along the
walk in the vicinity of the excavation, a mule hitched
near by kicked at her, and in attempting to avoid the
kick the plaintiff sprang back and fell into the un-
guarded hole, and thereby received the injuries com-
plained of in that case. This court in that case held
the city liable for damages for the injuries received by
the plaintiff. That opinion was clearly right, for the
reason that the evidence showed that the negligence
of the city concurring with the kick of the mule caused
her injury.

The same rule of law was properly applied by
this court in the case of Brennan v. St. Louis, 92 Mo.
482. In that case the city had negligently permitted
the sidewalk upon one of its streets to become out of
repair, defective and in a dangerous condition for
pedestrians passing over it. Upon the occasion in

question the plaintiff was passing along the walk when her sister, who was with her, stumbled against her and accidently pushed her into said dangerous hole, and thereby broke her leg. The city attempted to escape liability upon the ground that its negligence was not the sole cause of the injury, but it was the result of the sister's stumbling and pushing her into the hole. But the court denied the city's contention, and said that the city was liable for the injury caused by its negligence, although the accidental stumbling of the sister contributed to plaintiff's injury.

So in the case of Brash v. St. Louis, 161 Mo. 433, the city had negligently permitted a defective sewer to exist near plaintiff's property up to May 27, 1896, when a very heavy rain fell, causing the sewer to burst and thereby flood plaintiff's property. In that case the court correctly held that if the defects in the sewer and the unusual rainfall were concurring causes of the injury, then the city was liable for the resulting injuries done to plaintiff's property.

In the case of Straub v. St. Louis, 175 Mo. 413, the plaintiff was injured as a result of the combined negligence of a merchant in placing an obstruction in the street, upon which to display his goods, and the negligence of the city in permitting the obstruction to remain in the street. This court held that the negligence of both of them caused the injury and correctly held the city liable.

The case of Zeis v. Brewing Assn., 205 Mo. 638, which is relied upon as supporting the rule contended for by my learned associate in the case at bar, was written by myself, and while I indorse everything therein stated, yet paragraph four thereof, the one quoted from, was not concurred in by any of my associates, either in Division or in Banc, excepting LAMM, J. But independent of that fact, the evidence in that case showed the defendant had negligently furnished plaintiff with a weak and defective box in

which he was required to handle and deliver bottles of beer, and while so handling them the bottom of the box gave way, precipitating the bottles of beer, which were highly charged with gas, upon a granitoid pavement, and thereby caused them to break and small particles of the flying glass struck and penetrated the eye-ball of the plaintiff. Upon that state of facts counsel for the defendant asked the following instructions: ''3. Your verdict must be for the defendant unless you find from the evidence not only that the box in question was weak and insecure and that its weak and insecure condition was the direct cause of the plaintiff's injury, but you must further find from the evidence that the defendant either knew the box to be in such weak and insecure condition or that there was some visible sign or indication upon the box itself showing it to be weak or insecure, and that such sign or indication had existed for such length of time prior to the injury that defendant, by the exercise of reasonable diligence, would have discovered the defect. Without such knowledge or notice, the defendant was not guilty of negligence.'' While the opinion in that case does not state the facts as fully as might be desired, yet counsel for defendant in that case, both in oral and printed argument, contended that the trial court erred in not giving that instruction, for the reason, as contended by him, that if the weak and insecure condition of the box was not the direct cause of the injury, but that the flying glass was the direct cause, then the plaintiff was not entitled to a recovery. In discussing that contention of defendant's counsel the opinion states: ''The weak condition of the box was but one of several facts taken together which caused the injury. The falling of the bottle, its breaking, the flying of glass, and its striking the eye were all contributing causes of the injury. If the instruc-

tion had been given in the form asked, *then it could have been argued to the jury with great force and effect that it was the flying glass and not the weak condition of the box that caused the injury. While the weak condition of the box was the primary cause of the injury, yet it was by no means the sole and only cause thereof*". The law as just stated in the Zeis case is in strict accord with the rule stated by Judge Thompson in his excellent work on the law of Negligence, and by this court in the Bassett, Brennan, Brash and Straub cases, *supra*. But that is not this case, as will be hereinafter more fully explained.

As before stated, in each and every one of those cases, the pleadings, evidence and instructions showed that the plaintiff was injured as the result either of the concurring negligence of the defendant therein with that of some third person, or as the result of some independent cause to which defendant's negligence contributed; but in this case the pleadings, evidence and instructions are silent upon that question, and left the jury in the dark to speculate and conjecture as to what the contributing cause was, if any, which contributed to appellant's negligence which resulted in respondent's injury. The instruction in the case at bar does not tell the jury that if the slippery condition of the tracks contributed to appellant's negligence, and that the two caused the injury, then they would find for the respondent. That omission was clearly misleading and confusing, as will hereinafter be pointed out. In each and every one of those cases this court, in my judgment, correctly declared the law, because the instruction in each of those cases was based upon the evidence which tended to show that defendant's negligence was one of the contributing causes of the injury; and if that was true, then under all of the authorities the defendant in each of those cases was liable.

With these observations we may put aside all of those cases as having no bearing or application whatever to this case, for the reason before stated that there is not a syllable of testimony to be found in this record which tends even remotely to show that respondent's injury was caused by the concurring negligence of appellant with that of some third person, or through its negligence and that of some outside and independent cause. It is true, however, as the opinion herein states, that the evidence in this case shows that the car tracks were wet and slippery upon the occasion of the injury, which rendered it more difficult for the motorman who was in charge of the car to stop it in time to avert the injury; but it must be borne in mind that counsel for appellant does not contend that it is not liable to respondent because the slippery condition of the tracks contributed to its negligence, and for that reason it was not liable; but, upon the contrary, appellant has, from the time it filed its answer down to this time, strenuously insisted that it has been guilty of no negligence in the case, and that whatever injuries respondent received in the collision with the car were due to his own negligence and not that of the company.

That there was evidence of negligence on the part of respondent which contributed directly to his injury cannot be disputed in the face of this record, which shows that the respondent placed the motorman on the witness stand, and that he testified that when the car was within one or two car-lengths from the street crossing, the plaintiff suddenly drove his team and wagon immediately in front of the car and so close thereto that it was impossible for him to stop the car in time to have avoided the injury.

Now, bearing in mind the issues joined by the pleadings and the evidence which was introduced on each side which tended to support the petition and the answer, and the total failure of the evidence to show

any other contributing cause to respondent's injury except his own contributory negligence, then I respectfully submit that the court's instruction to the jury which told them that if they "further believe and find from the evidence that such negligence [of appellant] *directly contributed to cause* said collision between the said street car mentioned in the evidence and the wagon which plaintiff was driving and to cause the injury to plaintiff" was diametrically opposed to and inconsistent with that part of the instruction which required the jury to find that the plaintiff *exercised ordinary care* for his own safety before they could find for him, which is in the following words: "and that plaintiff looked and listened for an approaching car as he came into Carr street at a point where he could see the car approaching, and did see it before driving on the track, and that in attempting to cross said track and in crossing it, and while crossing he was *exercising ordinary care* for his own safety, then and in that case the plaintiff is entitled to recover", etc., for the reason that under the evidence there could have been no other cause "which directly contributed to cause said collision" except the contributory negligence of the plaintiff himself.    That being unquestionably true, then we have an instruction telling the jury in one clause that the plaintiff must exercise reasonable care for his own safety, and in the next practically telling them that if his own negligence (because there was no other shown) *"directly contributed to cause* said collision", and injury, then they would find for the respondent. In my judgment those two clauses of the instruction are clearly in conflict with each other, and were especially misleading and confusing to the jury when they read them in connection with the other instructions given for appellant, submitting to the jury the question of respondent's contributory negligence, for the reason that when the jury read said instructions given for appellant they would naturally read

them in connection with those given for respondent, and they would there come face to face again with the conflict existing between the appellant's instructions on contributory negligence and those of respondent on the question of exercising due care; and this latter conflict is just as sharp, misleading and confusing as is the conflict that exists between the two clauses of respondent's instruction before pointed out.

In other words, if that is the law, then we have, as in this case, this state of affairs—one instruction given on behalf of defendant, telling the jury that if they believe from the evidence that plaintiff's negligence contributed to his injury then he could not recover, and another given on behalf of plaintiff, telling the jury that if defendant's negligence contributed to plaintiff's injury then he could recover, and that, too, where the record is perfectly barren of all evidence of contributory negligence except that of plaintiff himself. Can you conceive of instructions being more contradictory to each other and more misleading than are those given in this case? I must confess I cannot.

Under that condition of the instructions, the jury must have reached the conclusion that if appellant's negligence contributed to respondent's negligence, and that the two resulted in the latter's injury, then the instructions authorized them to find for respondent, notwithstanding his own negligence. That is the plain meaning of the appellant's and respondent's instructions when read together.

Counsel for respondent seeing and recognizing this vice and the inconsistency existing in his own instruction and that existing between his and appellant's instructions, attempts to justify and fortify that infirmity by citing the case of Zeis v. Brewing Assn., supra. But I submit that case is not in point and does not justify or cure the vice mentioned.

If it had been the intention of counsel for re-spondent to hold the appellant liable for the negli-gence of the appellant concurring with the slippery con-dition of the car tracks, then why did he not draw his instructions upon that theory, and thereby require the jury to find that fact, and not leave them in the dark to conjecture as to what the words "directly contrib-uted to cause" the injury referred? With stronger reason the jury must have believed those words re-ferred to the negligence of respondent than to the slippery condition of the tracks, for the reason that his negligence was interposed as a defense in the case, and there was testimony introduced tending to prove it, while the slippery condition of the tracks was not interposed as a defense, or referred to in the instruc-tions.

In order to bring this case within the rule an-nounced by this court in the case of Bassett v. St. Joseph, supra, and the Zeis case, just mentioned, counsel for respondent dwelt at some length in his argument upon the fact that the slippery condition of the car tracks contributed to appellant's negligence which resulted in respondent's injury, and relies es-pecially upon the Zeis case in support of his argu-ment; and my learned brother who wrote the opinion herein has followed that argument and has fallen into the same error, of which I hope to be able to convince my associates before I conclude these remarks.

As before stated, it should be borne in mind that counsel for appellant has at no time in this case tried to escape liability for the injuries inflicted upon re-spondent because of the slippery condition of the car tracks as *being one of the contributing causes* of his injury, but introduced that evidence for the sole pur-pose of showing why the motorman did not stop the car as quickly as he ordinarily did in dry weather, thereby tending to disprove the charge contained in the petition to the effect that he negligently failed to

stop the car in time to have avoided the injury after he saw the perilous position in which respondent had placed himself. Not only that, appellant did not ask an instruction or argue that question to the court, as was done by counsel in the Zeis case. In other words, there was no pretense made by either party to this suit that any outside or contributing cause united with appellant's negligence which resulted in respondent's injuries, except his own acts of negligence; and when the court gave the instructions complained of, they authorized a recovery for respondent notwithstanding they may have believed he was guilty of contributory negligence.

If appellant had claimed or had asked the jury, as was done in the case of Zeis v. Brewing Assn., supra, that their verdict would be for defendant, if they believed from the evidence that the slippery condition of the track contributed to the former's negligence in producing respondent's injury, then the instructions in question would have been proper; but appellant made no such claim nor did it ask any such instruction, as did the defendant in the Zeis case. But the remarkable thing about this argument of counsel for respondent is, that he and not the appellant's counsel, the only one under the law who has any authority to interpose a defense in a case, has set up this pretended "slippery track" defense in this case as a straw man for the purpose of covering up the vice contained in his instructions, and then turns upon the poor dummy and completely demolishes it; but while setting it up and knocking it down he was not arguing or touching upon any issue presented in this case from start to finish. That argument and contention was simply a thin, flimsy piece of gauze stretched over the errors contained in respondent's said instructions, which at a casual observation would shield them from view, but when closely scrutinized they are easily seen

through, as well as are the errors beyond and behind them.

In the oral argument of the Zeis case, counsel for plaintiff stated that at the trial thereof in the circuit court, counsel for the defendant contended that the accidental hitting of the eye of plaintiff by the piece of flying glass from the broken bottle was the direct or proximate cause of respondent's injury, and not the defective and dangerous condition of the box, and that defendant was not liable for it, for the reason that the striking of the eye by the glass was not the ordinary and natural result that would be expected to follow the falling and breaking of the bottles that would fall from a defective box; and that in order to present that theory of the case to the jury, defendant asked the trial court to give instruction number 3, which the court refused to do. That statement was not denied by counsel for defendant, but in harmony therewith counsel for defendant, both in his oral and and printed argument in this court, advanced the same argument in support of his contention that said instruction correctly declared the law applicable to the facts of that case. Judge LAMM and myself were of the opinion that said argument was unsound, for the reasons therein stated, and held that said instruction so construed by counsel was not a correct statement of the law, and thought the court properly refused it, but none of the other judges expressed an opinion upon that question.

While the instruction upon its face was a correct statement of the law, yet as construed by counsel for defendant it was clearly erroneous, in my judgment, and was just as objectionable in results as if that construction had been written in the instruction. A great jurist once wrote, in construing a contract, that if the parties thereto would tell him what they had done under the contract, then he would tell them that their actions bespoke the true meaning of the contract, even

though it was not in strict accord with the letter thereof. That expression has been approved several times by this court.

Upon the same principle the Supreme Court of the United States in the case of Yick Wo v. Hopkins, Sheriff, 118 U. S. 356, held that an ordinance of a city or a statute of a State which was unobjectionable upon its face was nevertheless unconstitutional, null and void, if the construction placed upon it by the State courts was in conflict with the Fourteenth Amendment of the Constitution of the United States.

It was upon this theory I based my opinion that said instruction numbered 3 asked in the Zeis case was erroneous, and that if given with the construction placed upon it by counsel for defendant he would have then argued that theory of the case to the jury with the same force and effect as if that theory had been written into the face of the instruction. So, if we read that instruction in the light of the facts and circumstances surrounding the trial of that case, and the construction placed upon it by counsel for defendant, then it is clearly seen that the writer in discussing that instruction was condemning the instruction as interpreted by counsel who asked it, and not for the purpose of showing that the flying glass was an independent concurring cause with defendant's negligence which contributed to plaintiff's injury, as Judge VALLIANT understands and states that case; but, upon the contrary, the whole argument there advanced was to show that the flying glass and its striking the eye was not an independent and the proximate cause of the plaintiff's injury, as contended by counsel for defendant, but was to show that it was one of the direct and natural results of the negligent acts of defendant in furnishing the defective box and the falling of the bottles of beer therefrom upon the granitoid pavement.

Because of the misconception of that case, the majority opinion in this case seizes upon that case as an authority sustaining the proposition that the slippery condition of the car tracks in this case was a *concurring cause* with defendant's negligence which resulted in plaintiff's injury, in the same sense that the kick of the mule was a contributing cause in the Bassett case; and by so doing, what is the result? Inevitably it places the appellant in this dilemma: If it should offer evidence of the slippery condition of the car tracks at the time of the injury for the purpose of showing the motorman was not negligent in failing to stop the car after he saw the perilous position in which respondent had placed himself, and thereby escape the so-called humanitarian doctrine, which it had a perfect legal and moral right to do, then, under this instruction given on behalf of respondent, that evidence is seized upon by his counsel and argued to the jury that the slippery condition of the tracks was an act of God and a contributing cause to appellant's negligence which resulted in respondent's injury, and that, therefore, it is liable in damages for those injuries; while if appellant should take the other horn of the dilemma and decline to show the slippery condition of the tracks, then counsel for respondent would contend, just as he does, and correctly so if these instructions correctly state the law, that the car could have been stopped by the exercise of ordinary care on the part of the motorman in time to have prevented the collision and injury. So under the instructions as given it was impossible for appellant to successfully defend this case, even though it be conceded that the respondent was guilty of contributory negligence, as his own testimony tended to show he was by driving so close in front of the approaching car, and which he must concede under the humanitarian doctrine, and also that it was impossible on account of that negligence and of the slippery condi-

tion of the tracks for the motorman to have stopped the car in time to have averted the injury, after the respondent placed himself in the place of danger.

Under the instructions given in this case the appellant had no more show to defeat this suit than if the court had given the jury a peremptory instruction to find for the respondent.

This brings us to the consideration of the case of Riska v. Railroad, 180 Mo. 168. In that case, as in the case at bar, the petition charged the appellant with violating the speed and gong ordinances of the city of St. Louis, and also pleaded the "humanitarian doctrine." The answer was a general denial and a plea of contributory negligence. The evidence introduced by plaintiff tended to prove the allegations of the petition; and that of defendant tended to prove contributory negligence on the part of the plaintiff. In that case, as in this one, there was no evidence whatever tending to show that there was any other contributing cause to defendant's negligence which resulted in plaintiff's injury, except the contributory negligence of the plaintiff himself. Instruction numbered 2 given at plaintiff's request, among other things, told the jury that "if the jury further find from the evidence that such failure to give such signal *directly contributed to cause* the injury and death of Mathias Riska; . . . and if the jury further find from the evidence in this case that said Mathias Riska exercised ordinary care to look and listen for a car on said track before going upon and whilst crossing said track, and exercised such care to avoid injury to himself," then they would find for plaintiff. This summary of the pleadings, evidence and instructions in that case shows that it is on all-fours with this case, and are as much like each other as two black-eyed peas in a pod. That case upon its face is directly in point and supports the views expressed by VALLIANT, J., in his opinion in this case; but when

critically examined it will be seen that no objection
was made to said instruction by the defendant; and
the opinion therein was written by BURGESS, J., and
in discussing the case he never once mentioned or
referred to that instruction except to copy it in the
statement of facts of the case. While the judgment
for plaintiff in that case was affirmed, and the court
of necessity must have approved that instruction, yet
it is not entitled to the same weight and consideration
as it would have been had that able and learned
judge's attention been called to it and had it met
with his specific approval. If my attention had been
called to the Riska case before I wrote the opinion
in the case of Hof v. Railroad, 213 Mo. 445, I would
have called the court's attention to it on account of
the admiration and respect I have for the learning
and ability of the various members of Division No. 2
of this court, and would have requested that the case
be transferred to Court in Banc, for the purpose of
having the seeming conflict between the two cases
reconciled.

In the Hof case, as in this, the evidence tended
to show that both the plaintiff and defendant were
guilty of negligence, and the instruction in that case
was in all material respects the same as is the one in
this case; but, as in this case, there was not a word
of testimony which tended to show that there was
any contributing cause to defendant's negligence which
caused the injury, except the plaintiff's own negli-
gence; and under that state of the record this court,
after mature deliberation, held that the instruction
there given for plaintiff was bad because it was in-
definite and misleading.

In discussing the instruction in the Hof case,
supra, on page 467, the court used this language:
"Defendant complains of the first and second instruc-
tions given by the court on behalf of the plaintiff.
It is claimed that they are erroneous for the reason

that each of them authorizes the jury to find for plaintiff if they believe from the evidence that the facts predicated therein 'directly contributed to cause said collision,' etc. I will consider only the first instruction for the reason that what is said as to the first will apply equally well as to the second. The words quoted from the instruction do not tell the jury that if they found the facts stated therein caused the collision and the consequent injury then they would find for the plaintiff, but told the jury that if they found from the evidence 'that such negligence of defendant's servants to use ordinary care in running said car upon said crossing directly contributed to cause said collision and injury to plaintiff's person and loss and injury to his property; and if the jury further find from the evidence that the plaintiff exercised ordinary care to look and listen for an approaching car before and whilst going upon said crossing, and such care to avoid such collision and injuries, then the plaintiff is entitled to recover.' Under either of those instructions the jury might well have found, and doubtless did find, that plaintiff was not guilty of contributory negligence, but that he was injured by the concurring negligence of the servants in charge of the car, and some unknown cause not stated in the petition or shown by the evidence. Clearly, that was error. The instruction should have been so drawn as to have told the jury that before they could find for plaintiff they must find that the negligence of the defendant caused and not merely contributed to the injury. Many things might be suggested which contributed to the injury, not stated in the petition or mentioned in the evidence; and there is nothing in the instruction which would prevent the jury from considering such outside things. In other words, there is nothing in the instruction which told the jury that before they could find for plaintiff they must first find that its negligence caused the injury; nor does

the instruction limit the jury to a consideration of the acts of negligence stated in the petition, but leaves them to wander into the unknown fields of speculation to find out, if possible, what fact it was that must have existed that contributed to defendant's negligence which caused the injury. And there is nothing in the instruction which tells the jury what the fact 'was that existed which contributed to defendant's negligence in causing the injury, nor when or how it contributed therewith. I am unable to conceive of an instruction which is more indefinite in its meaning or more calculated to mislead the jury than the one under consideration.'' Who can say the jury did not find and believe that the concurring negligence of plaintiffs and defendant caused the injury?

My attention has not been called to a single authority which is in conflict with the law as announced in the Hof case, or with these observations, with the exception of the case of Riska v. Transit Co., supra; and, as before stated, the objection here made was neither made nor discussed in that case, and for that reason, in my judgment, it should not be considered as a binding authority.

The only other case relied upon for support of the majority opinion is the case of Newcomb v. Railroad, 169 Mo. 409. In that case the instruction told the jury that ''before the plaintiff can recover in this case it must appear to your satisfaction from the evidence that his injury was caused *solely* by the negligence of the defendant without any fault, neglect or want of ordinary care and prudence on his part.'' The defendant's contention in that case was that the plaintiff could not recover ''if his fault, neglect or want of ordinary care was only slight or remote.'' In discussing that instruction, the court, on page 422 of that Report, used this language: ''The vice claimed to be present in this instruction is that it limits the defendant's liability to the *sole* negligence of the de-

fendant, and that it precludes the plaintiff from recovering if he was guilty of 'any fault, neglect or want of ordinary care and prudence,' it being contended that the defendant is liable even if its negligence was not the *sole* cause of the accident, while the plaintiff could recover if his fault, neglect or want of ordinary care was only slight and remote. A defendant may be liable even if the accident was not caused by his *sole* negligence. He is liable if his negligence concurred with that of another, or with the act of God or with an inanimate cause, and became a part of the direct and proximate cause, although not the sole cause.''

From this excerpt from that opinion it is seen that it supports the Hof case and the views here expressed, and does not, as is contended, support the majority opinion.

So, I repeat, that if there had been any evidence in this case which tended to show that any cause outside of respondent's negligence contributed to appellant's carelessness which produced respondent's injury, then under all of the authorities the instruction in question would have been proper; but as there was no evidence whatever in this case tending to show that there was any such contributing cause, then the instruction was contradictory and misleading and warranted the jury in finding for the plaintiff even though they believed that his negligence contributed to *his injury, for the obvious reason that there was no evidence of any other contributing cause to which appellant's negligence could have contributed.*

When we look at this case as presented to the jury under the ''humanitarian doctrine,'' and under these contradictory, inconsistent and misleading instructions, it is clearly seen that appellant was as completely shorn of all defense as if the court had given a peremptory instruction to find for plaintiff; and that defenseless attitude in which appellant appeared be-

fore the jury doubtless contributed largely to the size of the verdict in this case, which was for $15,000. Before a judgment of that magnitude should be permitted to stand the court should be fully satisfied that the jury reached its conclusions under proper instructions, clear and free from all error, and in harmony with the well-settled principles of law.

I am, therefore, satisfied that both instructions, numbered one and three, given for plaintiff, are erroneous, as expressly held in the case of Hof v. Railroad, supra.

IV. All of paragraphs one, two and three regard the appeal of the Transit Company; and we will now consider that of the United Railways Company.

All of the questions presented by this record as regards the liability of the latter company were presented to and disposed of by this court in the case of Moorshead v. United Railways Co., 203 Mo. 121. We see no good reason for changing our views regarding the law as declared in that case; and we must, therefore, hold that this company is not liable to plaintiff, in this action; and that the court should have given the instruction asked by it in the nature of a demurer to the evidence.

The judgment is, therefore, reversed as to the United Railways Company, and reversed and remanded as to the St. Louis Transit Company.

This cause having been transferred from Division One to Court in Banc, on the dissenting opinion of WOODSON, J., after reargument and due consideration, said dissenting opinion is hereby adopted as the opinion of the Court in Banc, in which *Burgess, Fox* and *Graves, JJ.,* concur; and the opinion of *Valliant, J.,* delivered herein in said Division, is adopted by him as his dissenting opinion, in which *Gantt* and *Lamm, JJ.,* concur.

SEPARATE CONCURRING OPINION.

GRAVES, J.—I concur in the result reached by my Brother WOODSON, but for reasons somewhat different. That is to say, I do not follow all of his reasoning. Nor upon reflection and further consideration do I concur in all that was said in the course of the reasoning in the fourth paragraph of the opinion in Hof v. Railroad, 213 Mo. 445.

My views in the Hof case were thus: There was evidence in that case strongly tending to show contributory negligence on the part of the plaintiff. There was no evidence tending to show that there was any independent cause contributing to the injury. In other words the injury must have occurred (1) by reason of defendant's negligence, or (2) by reason of plaintiff's negligence, or (3) by reason of both contributing to produce the injury. I was of the opinion then and am of such opinion now, that in a case wherein there is no evidence of any outside cause which tended to produce the injury in conjunction with the negligence of the defendant, it is error to give an instruction using the words "contributed to cause the injury" or words of similar import, because such an instruction is liable to be very misleading to the average jury. It would not be to lawyers, but instructions are not given for the benefit of lawyers. In such case, a jury unlearned in the law might well ask, What does the court mean by the words "contributed to cause?" The jury might argue thus: "The court would not have used the word 'contributed' had it meant for us to find that the negligence of the defendant was the sole cause of the injury. Then if it did not so mean, it must have meant that if the negligence of defendant 'contributed to cause the injury' such contribution must have been one made to the contributory negligence of plaintiff,

220 Sup—43

because there is no evidence in the record that any other than these two causes or causal acts contributed to the result.''

So that we repeat that in a case like the Hof case, where there is no cause shown for the injury, save and except the negligence of the defendant on the one hand or the negligence of plaintiff on the other hand, then in submitting the negligence of the defendant, by instruction, it is error to use the words ''contributed to cause,'' because it renders the instruction misleading. And this was what the writer had in mind when concurring in the Hof case. There can be no question that a defendant may be liable where his negligence has concurred with some outside cause to produce the injury, which injury would not have been produced by the outside cause alone.

By outside cause, of course, we exclude from view the negligence of the plaintiff himself. We are inclined to think that some things said *arguendo* in the fourth paragraph of the Hof case go further than this, and hence my reference to it at this time. The result in the Hof case was right and the instruction in that case was properly condemned.

Now to the case at bar. There is evidence that the track was slippery and that this tended to prevent the stopping of cars as readily as they otherwise could have been stopped. So that in this case it might be said that there was a cause, other than the negligence of defendant, and other than the negligence of the plaintiff that contributed to the injury. Under such circumstances there is less reason to condemn the instruction in question than in the Hof case, *supra*. The instruction would at least be less misleading, and perhaps not misleading at all. Because in the case at bar, the jury could not be forced to say that the negligence of defendant contributed to the negligence of plaintiff and jointly produced the injury, as they practically had to do in the Hof case, if they by their

reasoning gave the word "contributed" any meaning whatever, but the jury might say that the court meant by the word "contributed" that the negligence of defendant and the slippery track produced the injury. In the use of the words "contributed to cause" in an instruction they should always be so safeguarded as to exclude the idea that the concurring negligence of plaintiff and defendant will permit a recovery. What I have said will indicate how far I concur in the reasoning of the opinion in the present case. Such words were early condemned by this court. [Smith v. Hardesty, 31 Mo. 411.]

So much for outside questions. Now to the reasons for my concurrence in the result reached by my Brother WOODSON.

I. Plaintiff asked and received three long instructions covering different phases of alleged negligence upon the part of the defendant, outside of that character of negligence usually charged to a defendant in a case wherein the humanitarian doctrine is relied upon. This alleged negligence of the defendant was placed to the jury in a fourth long instruction. Each of the first three instructions mentioned contains in the close thereof the following or a very similar clause, "and that in attempting to cross said track and in crossing it and while crossing it, plaintiff was exercising ordinary care to avoid injury to himself, then and in that case the plaintiff is entitled to recover against the defendant St. Louis Transit Company."

The effect of this clause was to submit the alleged contributory negligence of the plaintiff to the jury:

Plaintiff briefly described the occurrence thus: "Q. State how that occurred, in your own language? A. Well, when I came up to the building line I looked both ways; I always done that when I crossed a street; I saw the car on the west side of Fourteenth street;

it was three hundred feet or more out west further, but I kept going on, and I thought sure I had plenty of time to get across the track; and then I looked again, and I saw the car about the middle of the block and my first part of the wagon was in the track; and after that I could not see any more of it on account of the boxes, for I never thought the car was going to hit around me, for when I saw it, it was far enough away; but when the car struck I could not see the motorman and he could not see me. Q. Were your horses going fast or slow? At what gait were the horses going? A. They were going about two miles per hour.''

The evidence shows that the street car line was in the center of Carr street, and that Carr street was sixty feet in width. Carr street runs east and west. Plaintiff approached from the north and was going south. When he approached on a high-seated wagon there was nothing to obstruct his view of the street car line after he passed the building line on the north side of Carr street. He says that he then looked and saw this car, as he says three hundred feet away. One of his witnesses says, two car-lengths or sixty feet away. He was familiar with the crossing, having used it almost daily for several years. The incline was downward at the rate of seven feet to the hundred. His witnesses say the car was going nearly twenty miles an hour. What they saw he must have seen, for they were in no better position to see and know than he. He saw this rapidly moving car coming down a grade of that character just as he passed the building line, yet with his horses moving only two miles an hour he drives forward, and according to his own statement never looked again until the front wheels of his wagon were in the tracks. Knowing that a car was coming and rapidly coming, he made no attempt to see the position of the car at the time his horses reached the track, and

before they went upon the track. Had he looked then he would have no doubt seen that he could not make it across. Under the evidence of the plaintiff and his own admissions the court should have declared as a matter of law that plaintiff was guilty of contributory negligence and there was therefore error in instructions numbered 1, 2 and 3, given at his request. This, of course, would leave for submission only such negligence of the defendant as was involved in a proper instruction under the. humanitarian rule.

We cannot determine upon what theory the verdict was returned. At any rate the defendant was entitled to have instructions based upon the theory that plaintiff was guilty of contributory negligence, and to have the case confined to the humanitarian doctrine alone. For this error the judgment must be reversed and the cause remanded.

II. There is also another reason why this verdict should not be allowed to stand, a matter not particularly discussed by counsel and not mentioned in either of the opinions filed. The defendant asked and the court refused the following instruction:

"The court instructs the jury that while it is the duty of those operating street cars operated by electric power along the streets of a city, to avoid injuring persons using such streets, yet it is also the duty of persons using such streets to themselves exercise care to avoid being injured by such cars.

"If, therefore, the jury find from the evidence that plaintiff, driving a wagon drawn by a pair of horses and loaded with boxes, drove along Thirteenth street toward Carr street, and drove into Carr street, and that as he so drove into Carr street he looked to the west and saw that such a car was approaching from the west and was then about one block from Thirteenth street, and that plaintiff without paying any attention to the speed at which such car was so

approaching, ceased to observe the car, and drove onto the street railway track along which the car was approaching, paying no attention to the car; and that after having so driven onto such track in front of such approaching car, plaintiff again looked for the car, and saw it, and saw that it had reduced its distance from plaintiff to about one-half of the distance at which plaintiff had before seen it, and that it was still approaching him; and that thereupon plaintiff; heedless of the danger of his situation, again turned his attention from the car, misjudged his situation, and assumed that there was no danger of the wagon he drove being struck by the car, and did not increase, or attempt to increase the speed at which he was driving, and that he was driving at a walk, and that by reason of the failure of the motorman in charge of said car to stop the same, and by reason of such failure of plaintiff to recognize the danger of the situation, and of his failure and neglect to make any effort to avoid a collision of said car and wagon, the plaintiff received the injuries sued for in this action, then the jury will find that plaintiff was guilty of negligence directly contributing to his said injuries, and in that event the verdict of the jury will be for the defendants.''

This instruction is one fairly predicated upon the facts and circumstances in the case, and is the only instruction asked by the defendants, barring of course the demurrer to the evidence. If the court was going to submit the question of contributory negligence at all, as it did attempt to do in instructions numbered 1, 2 and 3, for the plaintiff, the defendants were clearly entitled to have an instruction upon contributory negligence covering their theory under the facts, and its refusal was clear error, if the question was to be submitted at all.

Considering that plaintiff was fifty-six years old, with an earning capacity of only eleven dollars per

week, the sum of fifteen thousand dollars for the am-
putation of a leg just above the ankle looks exceed-
ingly large, but defendants have not urged that in
the motion for new trial, and it is not a question here.
We mention it, that so far as we are concerned, such
may not be considered as precedent in future cases.

For these reasons the judgment against the de-
fendant transit company should be reversed and re-
manded. As to the judgment against the other de-
fendant, we understand that all agree it should be
reversed outright.

## DISSENTING OPINION.

VALLIANT, J.—I do not concur in the result
reached by the majority opinion for reasons fully as-
signed in my opinion filed in Division One, which I
have hereunto attached and filed as and for my dis-
senting opinion in this court. In my dissent I am
joined by *Gantt* and *Lamm, JJ.*

Plaintiff recovered a judgment for $15,000 against
both the defendants as damages for personal injuries
suffered by him in consequence of a wagon, in which
he was riding as driver of the team of horses, being
struck by a street car which was being operated at
the time by the St. Louis Transit Company on a street
railway track belonging to the United Railways Com-
pany. From that judgment both defendants have ap-
pealed.

The petition charges that the defendants owned
and operated the street railway and cars. The acts
of negligence charged are: 1. Running the car at
a speed in excess of eight miles an hour in viola-
tion of a city ordinance. 2. Operating the car at
a rate of speed that was negligent under the circum-
stances. 3. Failing to sound the gong. 4. Negli-
gently failing to stop the car to avoid the collision

after the motorman saw the position of peril in which the plaintiff was.

The answer was a general denial and a plea of contributory negligence.

There is not much, if any, dispute about the facts. The plaintiff was driving a two-horse wagon loaded with empty boxes. He was sitting on the driver's seat in the wagon directly over the front wheels and about four feet behind the horses. There were flanges on the sides of the wagon; the boxes were piled up high behind the driver and on each side of him, extending above his head about two feet, intercepting his view on either side. The length of the outfit, from the rear of the wagon to front of the horses, was about twenty-five feet.

Carr street runs east and west. There was a single-track street railway in Carr street, on which the cars were operated from west to east. Going east a car would cross in succession Fifteenth, Fourteenth and Thirteenth streets. This accident occurred at the intersection of Thirteenth street. From Fourteenth to Thirteenth street the distance is 310.7 feet. Half way between Fourteenth and Thirteenth is an alley. Carr street is sixty feet wide, with a sidewalk twelve feet wide on each side, leaving a roadway from curb to curb thirty-six feet wide. The houses on the north side of the street come out to the building line.

Thirteenth street was at that time the only street between Fifteenth and Broadway (which by its number would be Fifth street) on which there was no railway track, and it was a much traveled street. The plaintiff was coming from a point north of Carr street driving south on Thirteenth. When he got to the building line on the north side of Carr street he looked to the east and to the west, and he saw a street car at Fourteenth street coming east, his horses were going at a walk and he testified that he thought he

had time to cross the track in safety, therefore pro-
ceeded on his way. When the front part of his wagon
was on the track he again saw the car, it was then
at the alley in the middle of the block between Four-
teenth and Thirteenth streets, about one hundred and
fifty feet distant; after that, because the boxes were
piled up on both sides of him, he could not see the
car again, but he still thought, as he testified, that
he would cross in safety. But before the wagon had
cleared the track the car struck the rear part of the
hind wheel with such force that the plaintiff was
thrown to the street and some of the boxes fell on
him. He was seriously injured.

The testimony tended to show that the car was
going unusually fast, that it was going twice as fast
as usual at that point; the rate was estimated at fif-
teen to eighteen miles an hour. The testimony was
that it was going with such momentum that after strik-
ing the wagon it went a considerable distance into the
next block.

The plaintiff called the defendant's motorman as
a witness, presumably to prove that it was a car of
the transit company and that he was in the service of
that company, but he was also asked about the equip-
ment of the car and to give his understanding as to
how the accident occurred. He testified that the car
was well equipped, brake, sandbox, reverse and all
in good order. He testified that when he first saw
the wagon and team they were just coming into Carr
street and he was about two car-lengths distant, that
is, about sixty-four feet; he sounded the gong and
then the plaintiff looked at him, the horses had got
into the street and about ten or fifteen feet from the
track. "I was sounding the gong; and I saw he was
going to strike the car; I already had the brake partly
set; I saw the car was sliding and I reversed the
power and shoved the lever down and then the car slid
into the wagon." He had already stated that the

track was muddy and slippery and that there was a downgrade. "Q. When you were two car-lengths away, I understand you to say you then realized there would be a collision and then you set your brakes? A. Yes, sir. . . . I could not have stopped the car quicker than I did. Q. How many feet more would have been required? A. It would have taken about three feet more." The testimony of plaintiff's other witnesses was to the effect that the speed of the car was not reduced any from Fourteenth street to the point of collision, and that after the collision it ran a considerable distance into the next block.

The city ordinance limiting the speed of the car to eight miles an hour was read in evidence, also the Vigilant Watch Ordinance. A lease from the United Railways Company to the transit company of its tracks and equipments was read in evidence. This was the same lease that was in question in the case of Moorshead v. United Railways Co., 203 Mo. 121.

At the close of the plaintiff's case each of the defendants asked an instruction in the nature of a demurrer to the evidence which was refused and exception taken. Defendants introduced no evidence.

In three of the instructions given for the plaintiff the jury were authorized to find the defendant guilty of negligence based on the speed of the car; in the first instruction it was said that if the car was going faster than eight miles an hour it was going in violation of the city ordinance and it was therefore negli-gence on the part of the transit company; in the second and third it was said that if the car was going at a rate of speed which under the circumstances was dangerous the act was negligence. And in those three instructions if the jury should find the defendant transit company guilty of negligence in the particulars there mentioned and that such negligence caused (or, as said in the first and third instruction, contributed to cause) the accident, and if the jury should find that

the plaintiff was at the time exercising ordinary care to avoid injury to himself, the verdict should be for the plaintiff against the transit company.

The fourth instruction was given on the humanitarian doctrine. It was in effect that if the motorman saw the plaintiff in a condition of peril, likely to be struck by the car, in time by the exercise of ordinary care to have avoided the collision and failed to do so, the plaintiff was entitled to recover, notwithstanding the jury might find that the plaintiff was guilty of negligence in attempting to cross the track at the time and under the circumstances.

The instructions are long and it is unnecessary to copy them in full because their substance is sufficiently stated above to enable us to appreciate the points presented by appellant transit company in relation to them.

I. Appellants' first point is that by asking instruction numbered 4, on the humanitarian doctrine, the plaintiff confessed that he was guilty of negligence, therefore he had no right to instructions 1, 2, and 3 which authorized a verdict in his favor only on a finding by the jury that he was not guilty of negligence.

The position assumed by the plaintiff in asking instructions 1, 2 and 3 is not inconsistent with his position assumed in instruction 4. In his first three instructions he asks a verdict based on a finding that the accident occurred by reason of the unlawful or dangerous speed of the car. He was entitled to instructions on that theory because his evidence tended to prove it, but if that was all the complaint that he had to make against the defendant he could not recover on that alone if the jury should also find that he was guilty of negligence that contributed to the accident; therefore he qualified his demand for a verdict on that theory by inserting in his instructions

that the jury should also find that he was exercising ordinary care. But whilst he was entitled to go to the jury on that theory he was not limited to that, because his pleading and proof went beyond that and were broad enough to give him another theory on which the jury, if the facts were so found, might give him a verdict. Not in contradiction to the first theory, but entirely consistent therewith and in addition thereto, he charges that the defendant not only ran its car at an unlawful or dangerous speed but also that after the motorman saw him in peril he could, by the exercise of ordinary care, have averted the injury, yet failed to do so, and the law as declared in the instructions is to the effect that whilst his own negligence would defeat a recovery on the one state of facts, yet if in addition to those facts the other facts are found he would be entitled to recover even if he was guilty of negligence.

The humanity rule proceeds on the principle that human life is so precious the law will not justify or excuse its destruction if, by the exercise of ordinary care, the destroyer could have avoided it even though the man had not taken the care that he should to protect himself, and in such case the courts refuse to apply the ordinary law of contributory negligence. The humanitarian rule is simply an exception to the general rule concerning contributory negligence; it means that under certain conditions the law that a plaintiff cannot recover when he has been guilty of contributory negligence does not apply. That is what this court said in Kellny v. Railroad, 101 Mo. 67. In that case the judgment was reversed for errors in the instructions, one of which undertook to state but did not correctly state the humanitarian rule. There was also an instruction given which declared as a matter of law that the plaintiff had been guilty of contributory negligence. This court held that under the evidence in that case the question of whether the plain-

tiffs had been guilty of contributory negligence was one of fact for the jury and in remanding the cause to be tried again the court, at page 79, said: "An instruction ought to have been given submitting to the jury the question of the plaintiff's alleged contributory negligence, and one submitting the question of whether the defendant's employees could, by the exercise of reasonable care, have discovered his situation, and thereafter have stopped the train in time to have prevented the accident." The court reversed the judgment and remanded the cause to be retried on exactly the kind of instructions that were given in the case now before us.

The question of whether a plaintiff has been guilty of contributory negligence is often a close one and the question of whether, conceding such negligence, the defendant saw him in time to have saved him is likewise often a close question. A plaintiff may well believe that he had exercised due care, and, so believing, he has a right to present his case to the court on that theory, but he may also well believe that whether guilty of negligence himself or not, the defendant could have saved him from injury if he would, but would not, and so believing he has a right to present that theory of his case to the court.

We hold that the plaintiff was not precluded from submitting to the jury the question of whether or not he was guilty of contributory negligence, by reason of his asking also an instruction on the humanitarian rule.

II. Appellants' next point is that the instructions 1, 2 and 3 were erroneous because they submitted the question of the plaintiff's contributory negligence to the jury, whereas the court ought to have declared as a matter of law that the plaintiff was guilty. In support of that contention appellant in its brief says: "He drove upon the track immediately in front of

the car which he saw was bearing down upon him, when by stopping his horses he could have let it pass and thereby have averted the collision.'' If that were a correct summary of the evidence then the court should have declared that the plaintiff was guilty of contributory negligence. But in that summary appellant overlooks all the evidence except that of the motorman, and overlooks some of the inaccuracies of his testimony. He testified that he did not see the wagon until he was within two car-lengths of it, that is, sixty-four feet; that he then realized that there would be a collision, or as he expressed it that the wagon was going to strike the car, and he did everything in his power to stop before colliding, but did not succeed.

The testimony of all the other witnesses to the scene was to the effect that when the plaintiff drove into Carr street, the street car was as far west as Fourteenth street, that it was going unusually fast and did not slacken speed until it struck the wagon. The motorman was called by the plaintiff and therefore plaintiff cannot question his veracity, but plaintiff is not bound by everything his witness says and may show by other witnesses that this witness was mistaken. It was for the jury to decide which witnesses were most probably correct. If the testimony of the plaintiff and that of his witnesses, other than the motorman, was true, the court could not as a matter of law say that he did not exercise reasonable care, and whether that testimony was true was a question for the jury.

We must bear in mind that this was not a crossing of a steam railroad in the country. If a man seeing an engine and train coming on a steam railroad in the country three hundred feet distant, and if he should, in the face of the approaching train, attempt to drive a team of horses with wagon at a walk across

the track, there would be presented a very different case from the one we have before us.

The public has as much right to use a public street in the city as has the street car company and each must yield reasonable regard for the right of the other. If every person about to drive across a street railway in the city should be compelled, when he sees a street car coming three hundred feet away, to stop and wait until the car passes there would be an unreasonable hindrance in ordinary street traffic. The plaintiff testified that when he cleared the building line coming into Carr street he looked and saw this car coming, it was then at Fourteenth street, which by measurement was shown to be three hundred and ten feet from Thirteenth street; he had then about thirty-five or forty to go to get on the other side of the track; if the car had been going, as plaintiff had a right to presume it was, within the speed limit prescribed by the ordinance he could reasonably have calculated that he could have passed over before the car reached him, and if the motorman was conscious that he was going faster than he should, or than was usual, it was his duty, seeing the wagon, as he must have seen it if he was looking, to have reduced his speed, and the court could not say as a matter of law that under those circumstances the plaintiff was guilty of contributory negligence if he took into his calculation the presumption that the motorman would do his duty. This is the account of it given by the plaintiff himself: "Well, when I came to the building line I looked both ways. I always done that when I crossed a street; and I saw the car on the west side of Fourteenth street; it was three hundred feet or more out west further. I kept going on; I thought sure I had plenty of time to get across the track; when I looked again I saw the car about the middle of the block; the first part of my wagon was in the tracks, and after that I could not see any more of it on ac-

count of the boxes, but I never thought the car was going to hit around me, for when I saw it it was far enough away, and when the car struck I could not see the motorman and he could not see me.''

According to this testimony when the plaintiff's team had advanced far enough into Carr street to enable him from his position in the wagon to look for a car he saw the car three hundred feet or more distant and believing he had ample time to cross he drove on; when part of his wagon was in the tracks he looked again and the car was in the middle of the block, one hundred and fifty feet distant; he had then probably only ten or fifteen feet to go before clearing the track, while the car had ten times that space to travel. Plaintiff was then in a position in which he could not stop and from which he could not retreat, he could only go ahead, but he was in plain view of the motorman and there was evidence that the car could have been stopped in half the distance with safety. If that was the condition, then, even if the plaintiff was negligent in putting himself in it, the defendant would be liable under the humanity rule and whether or not that was the condition was a question for the jury. In a case very like this our St. Louis Court of Appeals in an opinion by Judge BLAND very clearly expounds the law. [Heintz v. Railroad, 115 Mo. App. 667.] The trial court did not err in submitting the question of plaintiff's contributory negligence to the jury.

III. It is insisted that instructions 1 and 3 are erroneous because they authorized a finding for the plaintiff if the negligent acts therein hypothesized ''contributed to cause his injuries;'' the contention is that the instructions should have said ''caused'' the injuries.

As we have already seen, those two instructions authorized the jury to find for the plaintiff only if

besides finding that defendant was guilty of the negligent acts therein mentioned they should also find that the plaintiff was exercising ordinary care for his own safety, therefore, it is not contended that the instructions are susceptible of the meaning that plaintiff could recover if defendant's negligence contributed with plaintiff's negligence to cause the accident, but the contention is that they authorized a recovery if the defendant's negligence only contributed with other conditions, not named, to cause the accident.

If the proposition of the learned counsel is that in order to establish the liability of a tortfeasor it must be shown that his act alone caused the injury complained of it is contrary to all our reading on that subject.

1 Thompson on Negligence, sec. 75: "If the concurrent or successive negligence of two persons, combined together, results in an injury to a third person, he may recover damages from either or both, and neither can interpose the defense that the prior or concurrent negligence of the other contributed to the injury."

29 Cyc. 487: "If the concurrent negligence of two or more persons combined together results in an injury to a third person he may recover from either or all. And in determining the liability of either of two persons whose concurrent negligence results in injury, the comparative degrees of negligence are not to be considered, each being liable for the whole, even though the other was equally culpable, or contributed in a greater degree to the injury, and the proportion in which the negligence of each contributed to the injury, or the degrees of care used, is not to be considered." And at page 496 the same text-writer says: "As a general rule it may be said that negligence

220 sup—44

to render a person liable need not be the sole cause of an injury. It is sufficient that his negligence concurring with one or more efficient causes, other than the plaintiff's fault, is the proximate cause of the injury." And at page 504 the author says: "Where the proximate cause of the injury was the act of God defendant will not be liable, although he was negligent. Where the *vis major* is of so overwhelming a character that it would have produced the injury independently of such negligence it will relieve the defendant from liability. Nevertheless, the rule imposing liability on defendant, although another efficient cause concurs with defendant's negligence, applies where an accident or act of God is the concurring cause."

Cooley on Torts (3 Ed.), p. 226: "When contributory action of all accomplishes a particular result, it is unimportant to the party injured that one contributed much to the injury and another little; the one least guilty is liable for all because he aided in accomplishing all."

The above quotations from standard text-writers are but a few that might be cited, all to the same effect; if there is any authority to the contrary it has not come under our notice.

According to the text-writers above referred to a defendant may be sued alone and held liable for the result of concurrent causes of which his negligence is one whether the other causes were acts of other persons or a condition of circumstances or an act of God. And if sued alone for a result of concurrent acts of negligence of himself and others he cannot escape liability on the plea that others equally or more guilty than he are not made parties or if sued for a result of his negligence concurring with physical conditions or an act of God, he cannot escape on the plea that his act only contributed to the result. If then a defendant is liable under such conditions when his act only

directly contributed to the result, why should not the jury trying the case be so instructed?

The law as laid down by the authors above named has always been recognized as correct by this court.

In Bassett v. St. Joseph, 53 Mo. 290, plaintiff was injured by falling into an excavation in or adjoining a street of the city; the evidence tended to show that when the plaintiff was on the brink of the excavation a mule either kicked her into the excavation or she jumped into it to avoid being kicked. The trial court instructed the jury that if they found certain facts indicating negligence on the part of the city in respect to the excavation they should find for the plaintiff unless they should find that her fall was caused solely by being kicked or jumping to avoid being kicked, in which event she could not recover. The verdict and judgment were for the defendant city and the plaintiff appealed. This court reversed the judgment on the ground that the instruction was erroneous, in as much as it did not present to the jury the theory of the liability of the city for its concurrent act of negligence contributing, with the kicking by the mule, to the result. The court said: "She would have a right to recover, notwithstanding the cause contributing to the injury was the attempt of the mule to kick the plaintiff," etc. The judgment in that case seems to have been reversed because the instruction did not tell the jury that defendant was liable if its negligent act "contributed to cause the injury," whereas in the case at bar we are asked to reverse the judgment because the trial court did instruct the jury as in that case this court said the trial court should have done. That decision was rendered in 1873 and the courts of this State have been trying cases of this kind on that theory from that day to this.

In Brennan v. St. Louis, 92 Mo. 482, it was contended on the part of the defendant city that the defective condition of the street was not the sole cause

of the injury to the plaintiff but that the stumbling of another girl was the immediate cause; but this court said: "Cases are to be found, where it seems to be held, under like circumstances, that in order to recover, it must be proven that the injury was occasioned solely by the neglect of the defendant, and not the neglect of the defendant, combined with some accidental cause. But this court, in discussing a like question in Bassett v. St. Joseph, 53 Mo. 290, l. c. 300, said: then follows a quotation from the decision in the Bassett case. Continuing the court in the Brennan case said: "The same principle, that the plaintiff may recover, where he is in the exercise of ordinary care and prudence, and the injury is attributable to the defective street, with some accidental cause, was again asserted in Hull v. Kansas City, 54 Mo. 598, and must be taken as established law of this State." The instructions under which the Brennan case was given to the jury are not copied in the report, but from the comment on them by the court we infer they contained words similar to those now complained of by appellant in the case at bar. The court's comment was: "By the instructions, upon which the case went to the jury, the plaintiff was allowed to recover, though the stumbling of the other girl in some degree contributed to the injury, but if that was the sole cause, the jury were told the plaintiff could not recover. These instructions present the law of the case fairly enough."

In Brash v. St. Louis, 161 Mo. 433, the plaintiff had been damaged by the bursting of a sewer belonging to the city, the bursting had immediately followed a rainstorm of unprecedented violence, there was evidence also of a defect in the sewer. The defense was that the bursting of the sewer was caused by the unusual rainstorm and an instruction was asked and refused to the effect that if the bursting of the sewer was caused by a storm of unusual force and violence the plaintiff could not recover. This court said: "Al-

though the unusual rainfall may have been one of the causes of the bursting of the sewer, yet if the defects in the sewer were also a concurring cause, producing that effect, the defendant is nevertheless liable, hence the court committed no error in refusing defendant's instruction numbered 6.''

In Straub v. St. Louis, 175 Mo. 413, the Bassett case and the Brennan case above cited are referred to as announcing the correct doctrine.

In Riska v. Railroad, 180 Mo. 168, instructions couched in the very same words of the instruction now assailed, that is, ''directly contributed to cause the injury,'' were there assailed for that reason, but the instructions were held to be right, the court saying: ''It would be difficult to couch an instruction in plainer or more pointed language than the parts of these instructions with reference to the cause of the injury.''

In Newcomb v. Railroad, 169 Mo. 409, an instruction given at the request of the defendant told the jury that plaintiff could not recover unless it appeared from the evidence that ''his injury was caused solely by the negligence of defendant, without any fault, neglect, or want of ordinary care and prudence on his part.'' The judgment was reversed because of the error in that instruction in using the word ''solely'' in connection with the causal negligence of the de-defendant. Thus in the line of our decisions we not only have cases which approve the term ''directly contributed to cause'', but cases which condemn the term ''solely caused''. There is really no difference in the meaning of the word ''caused'' in the sense in which it is contended by appellant in the case at bar that it should have been used, and the term ''solely caused'' in the sense in which it was used in the Newcomb case. The term ''caused'' in contrast with the term ''contributed to cause'' means solely caused.

In Zeis v. Brewing Assn., 205 Mo. 638, l. c. 654, this court approved the action of the trial court in refusing an instruction which said that plaintiff could not recover unless the jury should find that the condition of the box in question in that case was "the direct cause of the injury". This court commenting on that instruction said: "The weak condition of the box was but one of several facts taken together which caused the injury. The falling of the bottle, its breaking, the flying glass and its striking the eye were all contributing causes of the injury." In that case the only negligence charged in the petition or attempted to be proven by the evidence was the defective condition of the box, yet it was held in effect that it would have been error if the trial court had instructed that the plaintiff could not recover unless the defective box caused the injury.

There are other cases in our books in which the law as declared in the cases above cited is recognized, but the cases cited are sufficient to show the invariable ruling of this court on this subject. We have felt justified in making the somewhat lengthy review of our judicial history on this subject because in the brief of appellant we are confronted with a recent decision of this court which seems to hold to the contrary of what we have hitherto held. [Hof v. Railroad, 213 Mo. 445.] In looking back now over our course from 1873, when the case of Bassett v. St. Joseph was decided, down to 1907, when Zeis v. Brewing Assn. was decided, we are convinced that we fell into error when we reversed the judgment in Hof v. Railroad on the ground that the instruction in that case was erroneous because it contained the words "directly contributed to cause" instead of "caused" the injury, and we therefore overrule the case.

It is nearly always the case that the negligent act of the defendant is only a concurring cause of the injury, sometimes it concurs with the acts of others,

sometimes (and perhaps almost always) with physical conditions for the existence of which defendant may not be responsible, sometimes there are joint tortfeasors, sometimes it is the act of God in the wind and waves, but whatever the concurring act or thing may be (unless of course it be the negligence of the party injured himself), if it would not have caused the injury but for the concurrence of the act of the defendant, the defendant is liable. In the case at bar we have a down grade and a muddy, slippery track, which very likely were contributing causes to this accident, but, if the testimony of the plaintiff and his witnesses be true, those conditions would not have caused the injury in question if the defendant had exercised reasonable care.

If, therefore, the defendant is liable because his negligence directly contributed with the conditions surrounding to cause the injury, what error can there be in so directing the jury? It is argued that the instruction is vague in that it leaves the jury to speculate as to other causes that might have contributed to produce the result. But, whatever causes might run through the minds of the jury, the instruction authorizes them to hold the defendant liable only when they find that his negligent act directly contributed to cause the injury. If the defendant's negligent act did directly contribute to cause the injury then the injury would not have occurred without his negligent act, and the defendant is held liable not because of the acts of others or of conditions for whose existence it is not responsible, but because of its own negligence. If defendant's own act contributed to the result by concurring with other acts or conditions and the result would not have occurred but for his contribution, he is liable no matter what other possible causes might have existed, provided of course that the negligence of the plaintiff himself was not one of the causes. We hold that there was no error in those instructions.

IV. The last point presented by the appellant transit company is that plaintiff's instruction number 4 is erroneous because it permitted a finding for plaintiff if the jury believed the motorman could have averted the collision by stopping the car, instead of directing a finding for the plaintiff, as it should have done, in the event the jury believed the car could have been stopped with safety to the passengers, in time to have avoided the collision.''

The motorman's first duty, of course, was to his passengers, and if there had been any evidence tending to show that a quicker stop could have been made but for hazard to the passengers, or any circumstances to indicate to the trial court that the motorman was slower in stopping because of his guardianship over his passengers than he otherwise would have been, the trial court would have put that question in the instruction, but there was nothing in the case to suggest such a question. The motorman testified that he did stop as quickly as he could, using the brake, the reverse and sand, the other witnesses testified that he did not try to stop at all. The only mention of passengers by the motorman was when he was asked how many he had, he answered that there were ''quite a few,'' whatever that may mean. The court committed no error in omitting that question from the instruction.

V. All that is above said is in reference to the appeal of the transit company. We come now to the appeal of the United Railways Company.

The only evidence to connect the United Railways Company with the plaintiff's injury is to the effect that it owned the street railway and its equipment and had before the accident leased it to the transit company, which last named company alone was in possession and operating it. The lease was in evidence and it appears that it is the same lease that was before us in the case of Moorshead v. United Rys. Co.,

203 Mo. 121.   Following our decision in that case we now hold that the United Railways Company is not liable to the plaintiff in this action and the instruction asked by it in the nature of a demurrer to the evidence should have been given.

The judgment is affirmed as against the St. Louis Transit Company and reversed as against the United Railways Company. *Lamm, P. J.,* concurs; *Woodson* and *Graves, JJ.,* dissent from all except paragraph V, as to which they concur.   A majority of the judges not concurring, the cause is transferred to Court in Banc.